[No. 60084-8. En Banc. August 19, 1993.]

*In the Matter of the Dependency of* J.B.S.

TERESA SCOTT, ET AL, *Petitioners*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, ET AL, *Respondents*.

*Speidel Law Firm,* by *Earl W. Murdock,* for petitioner Teresa Scott.

*Bogle & Gates, Evan L. Schwab, David R. Goodnight,* and *Douglas R. Davis; Stansfield & Schuler* and *Mark E. Stansfield,* for petitioner J.B.S.

*Christine O. Gregoire, Attorney General,* and *Lesley A. Allan* and *Jill B. Keller, Assistants,* for respondent State.

*Daniel M. Arnold* of *Central Washington Legal Defenders,* for respondent Blas Beltran.

*Foster Pepper & Shefelman* and *David Utevsky,* for The Hearst Corporation.

JOHNSON, J. — The Superior Court entered an order in this dependency action placing J.B.S., a minor child and citizen of the United States, with his putative father, a noncitizen who resides in Mexico. J.B.S. and his mother have sought review of this order, which is pending in this court. At issue here is a motion by the Seattle Post-Intelligencer (P-I) to open the appellate court hearings and unseal the record in this case. J.B.S., through his guardian ad litem,[1] and his mother, Teresa Scott, have joined in the motion to open the proceedings. The Department of Social and Health Services (the Department) and the father, Blas Benicio Beltran, oppose the P-I's motion. We grant the motion.

---

[1] All references to actions taken by J.B.S. through his guardian ad litem will be referred to as J.B.S.

I

J.B.S. was born 4 years ago in April 1989. Beltran lived with Scott and the child until J.B.S. was 2 months old, at which time Scott separated from Beltran. Subsequently, Beltran was convicted of one count of delivery and one count of possession of cocaine. In December 1991, after serving his sentence, he was deported to Mexico by the Immigration and Naturalization Service.

J.B.S. continued to live with his mother in the Wenatchee area until early 1991, when state officials placed him in a foster home. In late 1991, the Department began investigating the option of placing J.B.S. with his father.

In October and November 1992, a commissioner for the juvenile division of the Chelan County Superior Court conducted hearings on the Department's motion for a change of placement for J.B.S. On December 17, 1992, the commissioner entered an order placing the child with Beltran in Mexico. Five days later, the P-I published an article outlining the details of the custody dispute and J.B.S.'s imminent transfer by the Department to his father in Mexico.

On December 31, 1992, the court denied a motion for revision and authorized the Department to begin transferring J.B.S. to Mexico that afternoon. The court also ordered the parties, counsel, and foster parents not to discuss the matter with the media, including the P-I, because the dependency proceeding was closed under RCW 13.34.

J.B.S. and Teresa Scott immediately moved for review by Division Three of the Court of Appeals and brought a motion for an emergency stay. The commissioner for the Court of Appeals heard the motion by telephone on December 31 and orally granted a temporary stay.

Prior to the telephone conference, a reporter for the P-I requested permission to monitor the conference for the emergency motion. After consulting with the parties, the commissioner denied the request and closed the argument to the public, and thereby the press, on the grounds the dependency proceeding was closed under RCW 13.34.110.

On January 15, 1993, the Hearst Corporation, publisher of the P-I, filed a "motion to open hearings and unseal files" in the Court of Appeals. On February 12, 1993, the commissioner ruled the entire matter was reviewable either as a matter of right in accordance with *In re Chubb*, 112 Wn.2d 719, 725, 773 P.2d 851 (1989), or as a matter of discretion under RAP 2.3(b), and granted review. The Court of Appeals then certified the entire case to this court, including both review of the Superior Court's order and the P-I's motion to open files. This court accepted certification, granted direct review, and scheduled the motion for hearing and decision separately from the underlying appeal. Review of the Superior Court's order will be heard at a later date.

## II

At issue is whether the appellate court files, briefs, and oral argument in this appeal should be open to the public or whether they must be closed pursuant to RCW 13.34.110 and RCW 13.50. RCW 13.34.110 provides that the general public shall be excluded from dependency hearings. RCW 13.50 governs the keeping and releasing of dependency records by juvenile justice or care agencies. RCW 13.50.100(2) states: "Records covered by this section shall be confidential and shall be released only pursuant to this section and RCW 13.50.010". RCW 13.50.010 provides for access to juvenile court records and files under certain conditions, but requires that anonymity and confidentiality must be preserved. *See* RCW 13.50.010(8).

The Department argues RCW 13.34.110 and RCW 13.50 require appellate courts to seal files and close hearings in dependency cases. According to the Department, appellate court files must not be disclosed to the public because they contain documents such as the clerk's papers and report of proceedings, which are confidential juvenile court "records" under RCW 13.50.010(1)(d) and RCW 13.50.100. The Department argues RCW 13.34.110 reflects a public policy in favor of closed juvenile proceedings and asks the court to fashion a rule for limiting accessibility to the briefs or oral arguments

in a dependency appeal where necessary to preserve the parties' confidentiality. In essence, the Department contends RCW 13.34.110 and RCW 13.50 require mandatory closure of *all* appellate dependency proceedings, including this appeal.

The P-I, J.B.S., and Teresa Scott (collectively the P-I) argue RCW 13.34.110 and RCW 13.50 apply only to superior court hearings and do not require appellate court proceedings to be closed to the press or public. The P-I claims the record and proceedings in this matter should be open because no motion has been brought under General Rule 15(c)-(1)(B) to seal them.

If RCW 13.34.110 and RCW 13.50 do apply in appellate proceedings, the P-I argues these statutes are unconstitutional because they mandate automatic closure. According to the P-I, such mandatory closure provides no room for the kind of individualized determination of whether to close a proceeding as required by this court in *Allied Daily Newspapers v. Eikenberry*, 121 Wn.2d 205, 848 P.2d 1258 (1993) or *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 640 P.2d 716 (1982). Rather, the P-I contends J.B.S. has a constitutional right to an open public hearing on his appeal pursuant to Const. art. 1, § 10 and U.S. Const. amend. 1.

■ We find the P-I's first two arguments dispositive and need not reach the constitutional question. These statutes do not apply to appellate proceedings. RCW 13.34.110 applies to hearings on dependency petitions, which must be filed *in superior court. See* RCW 13.34.040. RCW 13.34.110 provides:

> The court shall hold a fact-finding hearing on the petition . . ..
> All hearings may be conducted at any time or place within the limits of the county, and such cases may not be heard in conjunction with other business of any other division of the superior court. The general public shall be excluded, and only such persons may be admitted who are found by the judge to have a direct interest in the case or in the work of the court. . . .

By its own terms, RCW 13.34.110 applies only to juvenile or superior court hearings and does not apply to appellate court proceedings. Appellate courts are not included within the definition of "courts" under RCW Title 13: " 'Court' when used without further qualification means the *juvenile court*

*judge(s) or commissioner(s).*" (Italics ours.) RCW 13.04.011-(3). *See also* RCW 13.04.021(1) ("The juvenile court shall be a division of the superior court.").

The confidentiality requirement of RCW 13.50.100 governs only the handling of juvenile court files and records by juvenile justice or care agencies. "Juvenile justice or care agency" is defined to include "court", but again, that definition includes only the juvenile or superior court. The statutory definitions for records and files also refer only to the juvenile court and do not mention appellate records: " 'Records' means the official *juvenile court* file, the social file, and records of any other *juvenile justice or care agency* in the case". (Italics ours.) RCW 13.50.010(1)(d). RCW 13.50.010(1)(b) provides:

> "Official juvenile court file" means the legal file *of the juvenile court* containing the petition or information, motions, memorandums, briefs, findings of the court, and court orders;

(Italics ours.)

RCW 13.50.100 does not make any express provisions for the transmission of juvenile court records to an appellate court. RCW 13.50.100(3) provides for the release of "records" to "other participants in the juvenile justice or care system", but that does not include appellate courts, which are excluded from the definition of "juvenile justice or care agency" in RCW 13.50.010(1)(a). Under the Department's strict reading of these statutes, even the juvenile court's transmission of its records to this court would violate the confidentiality requirement of RCW 13.50. These statutes simply do not address how to handle these records or proceedings on appeal.

The clerk's papers and record of proceedings below were sent to this court pursuant to another juvenile statute, RCW 13.04.033, and Title 9 of the Rules of Appellate Procedure. RCW 13.04.033(1) provides:

> Any person aggrieved by a final order of the court may appeal the order as provided by this section. *All appeals in matters other than those related to commission of a juvenile offense shall be taken in the same manner as in other civil cases.*

(Italics ours.) RCW 13.04.033(1). GR 15(a), which applies to all Washington courts, states:

> Except as provided by this rule and by RCW 36.23.065,[2] the clerk shall maintain all documents and materials filed with the court, and shall make them available *for public examination.*

(Italics ours.)

The Department argues if dependency records are not sealed on appeal, every family will be faced with the prospect of having its story spread on the front page of a newspaper once an appeal is taken. That prospect may discourage appeals and, in turn, might have a chilling effect on the proceedings below.

 The Department's fears are unwarranted. GR 15 already provides a mechanism for sealing records, including records in juvenile proceedings:

> **(c) Grounds and Procedure for Requesting the Sealing or Destruction of Court Records.**
> (1) *Criminal Cases or Juvenile Proceedings.*
>
> . . . .
> (B) Sealing of Files and Records. On motion of any interested person in a criminal case or juvenile proceeding, or on the court's own motion, and after a hearing, the court may order the files and records in the proceeding, or any part thereof, to be sealed if the court finds that such action is expressly permitted by statute or that there are compelling circumstances requiring such action.

(Underscore ours.) GR 15(c)(1)(B). GR 15(d)(1) provides a means for opening records once they have been sealed. The Rules of General Application apply to all Washington courts, including appellate courts. Therefore, a party to a juvenile proceeding on appeal may move to seal the record under GR 15 if necessary to protect the confidentiality of the child and family.

Under GR 15, a party must show that either closure is permitted by statute or compelling circumstances require such action. Where closure is not provided by statute, as in this case, a court must decide whether compelling circumstances warrant closure. In *Ishikawa*, this court has set out five specific guidelines for deciding whether court proceed-

---

[2]RCW 36.23.065 addresses the destruction of original court records when microfilm or other copies are maintained for public use.

ings in a particular case should be closed to the public. *Allied Daily Newspapers*, 121 Wn.2d at 210-11; *Ishikawa*, 97 Wn.2d at 37-39. Under the *Ishikawa* guidelines, the proponent of closure must make some showing of the need for closure or sealing, and the court must weigh the competing interests for closure against the public's interest in open access. *Allied Daily Newspapers*, 121 Wn.2d at 210-11; *Ishikawa*, 97 Wn.2d at 37-39.

Although we do not reach the issue of whether public access is constitutionally mandated in juvenile dependency proceedings, the *Ishikawa* guidelines nonetheless provide an appropriate framework to be used by an appellate court in deciding whether to close an appeal in a juvenile dependency proceeding. *See, e.g., San Bernardino Cy. Dep't of Pub. Social Servs. v. Superior Court*, 232 Cal. App. 3d 188, 207-08, 283 Cal. Rptr. 332 (1991) (even if public access in juvenile dependency proceedings is not constitutionally mandated, courts may balance the competing interests and "allow press access unless there is a reasonable likelihood that such access will be harmful to the child's or children's best interest"); *New Jersey Div. of Youth & Family Servs. v. J.B.*, 120 N.J. 112, 127, 576 A.2d 261 (1990) ("the court must balance the public's right of access to judicial proceedings against the State's interest in protecting children from the possible detrimental effects"); *In re T.R.*, 52 Ohio St. 3d 6, 18, 556 N.E.2d 439 ("court must, in each case, weigh the competing interests for and against public access"), *cert. denied sub nom. Dispatch Printing Co. v. Solove*, 498 U.S. 958, 112 L. Ed. 2d 396, 111 S. Ct. 386 (1990). If a party on appeal believes the briefs should be sealed or the arguments closed to the public, it may bring a motion, and the court may then determine whether the facts in that particular case warrant closure under the *Ishikawa* guidelines. *See Allied Daily Newspapers*, 121 Wn.2d at 210-11; *Ishikawa*, 97 Wn.2d at 37-39. *See also San Bernardino*, 232 Cal. App. 3d at 207-08 (listing factors to be weighed in balancing competing interests for and against closure in juvenile proceedings).

In sum, an appellate court has at its disposal GR 15 and the *Ishikawa* guidelines for deciding on a case-by-case basis whether open or closed hearings, briefs, or records are in the best interests of the child during appellate review of a dependency proceeding. These tools give an appellate court the flexibility it needs to fashion the best relief for a particular case. For example, the court could allow oral arguments and briefing to be open to the public, but require the use of initials in the briefs and published opinions to protect the identities of the parties. The court could also determine that some parts of the record would be available to the public, but others would be sealed. Partial or total closure may be particularly appropriate in cases involving sex or child abuse. *See Allied Daily Newspapers*, 121 Wn.2d at 211 (closure may be warranted "to protect the child victim from further trauma and harm and to ensure the child's privacy").

■ ■ Such is not the case here. Both the mother and father have waived any confidentiality or privacy interest on their own behalf. J.B.S.'s guardian ad litem has also joined in the motion because he believes opening the proceedings would be in the child's best interest. In a dependency proceeding, it is the duty of the guardian ad litem to represent the best interests of the child and advise the court fairly. *North Am. Coun. on Adoptable Children v. Department of Social & Health Servs.*, 108 Wn.2d 433, 438, 739 P.2d 677 (1987); *In re Harney*, 19 Wn. App. 85, 87, 574 P.2d 395, *review denied*, 90 Wn.2d 1015 (1978).

As noted by the guardian ad litem, this case does not involve child abuse, neglect, or any other sensitive facts that, when made public, would be detrimental to the child's best interest. In that respect, this case appears similar to a New Jersey case, in which the court held the public's right to attend a juvenile proceeding was not outweighed by the State's compelling interest in conducting a private hearing. *New Jersey Div. of Youth*, 120 N.J. at 129. The court found dispositive the fact that the case involved an infant child, did not include allegations of abuse, and any revelations

would be unlikely to have any effect on the child. *New Jersey Div. of Youth*, 120 N.J. at 129.

In contrast, the Department has asserted only broad public policy reasons for closing *all appeals* of dependency proceedings. It has not brought a motion to seal this record under GR 15.[3] Likewise, it has failed to make any individualized showing of why *on the facts of this particular case* the records, briefs, or arguments should be closed to the public under the *Ishikawa* guidelines. As a result, the Department has failed to meet its procedural burden of persuading this court that access must be restricted. *See Ishikawa*, 97 Wn.2d at 37 (burden of persuading court on proponent of closure).

## III

We hold RCW 13.34.110 and RCW 13.50 do not apply to appellate proceedings, and the record, briefs, and arguments in an appellate review of a dependency determination are open to the public unless a motion is granted under GR 15 or *Ishikawa* to close the proceedings. We grant the P-I's "motion to open hearings and unseal files" and the relief requested, including: All appellate hearings in this action shall be open to the public; transcripts or tape recordings of all hearings previously held in this court and the Court of Appeals shall be made available for public inspection and copying; and all appellate court files in this action shall be unsealed and made available to the public.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, and MADSEN, JJ., concur.

---

[3]While no party has brought a motion to seal the files under GR 15, much of the briefing and argument has been devoted to the issue of whether the record should be sealed. Based on the briefing and arguments, such a motion would not appear to be well taken, at least on the record now before us.