150 P.3d 643 (2007)
In re the DEPENDENCY OF G.A.R., DOB: 7/16/2001, A minor child.
Tiffiney Sieffert, Appellant,
v.
State of Washington, Department of Social and Health Services, Respondent.
No. 56943-1-I.
Court of Appeals of Washington, Division 1.
January 22, 2007.
Elaine L. Winters, David L. Donnan, Washington Appellate Project, Attorneys at Law, Seattle, WA, for Appellant.
Shara Jeanne Delorme, WA State Aty. Gen. Ofc., Everett, WA, for Respondent.
GROSSE, J.
¶ 1 Records of juvenile justice or care agencies are deemed confidential at the juvenile court level pursuant to statute.[1] General Rule 15(g) states that "[c]ourt records sealed in the trial court shall be sealed from public access in the appellate court subject to further order of the appellate court." "Seal" is *644 defined by GR 15(b)(4) as "to protect from examination by the public or nonauthorized court personnel." We hold that this language is sufficient to include the statutory "confidential" classification. Therefore, because the official juvenile court file, the social file, and the records of the juvenile justice and care agencies in this case were protected from examination by the public in the juvenile court as "confidential," we hold those same items are sealed from public access on appeal subject to further order of the appellate court, pursuant to GR 15(g). In addition, the mother's assertion on appeal that she received ineffective assistance of counsel is controlled and sustained by this court's decision in In re Welfare of J.M.[2]

FACTS
¶ 2 The superior court terminated the parental rights of Tiffiney Sieffert to her 4-year-old son G.A.R. Sieffert was not present at the termination hearing.
¶ 3 At the start of the hearing the State offered for admission 65 exhibits, including written reports by several experts. Sieffert's counsel stated, "No objection" to the admission of these exhibits.
¶ 4 The State then called the only witness, Myron Egbers, a Department of Social and Health Services (DSHS) social worker who was assigned to G.A.R.'s case. Egbers had prior experience as a mental health therapist but did not have a license to serve as a counselor. Egbers was the petitioner when dependency proceedings commenced. Egbers testified that in 2001 he had received a referral from G.A.R.'s pediatrician that G.A.R. had missed one or two appointments and that the physician was concerned G.A.R. would fail to thrive. He then testified that he went on a home visit to check out G.A.R. and spoke to Sieffert about taking him to see the doctor.
¶ 5 Egbers further testified that during the two months of his involvement in the dependency proceedings he provided G.A.R.'s parents with referrals for drug and alcohol evaluations, information on how to obtain visitation, and information on how to obtain random monitored urine analyses (UAs). Egbers testified that during his involvement in the case the parents did not comply with his request for random monitored UAs, nor did they attend drug and alcohol assessment. He also said they did visit G.A.R. but would miss visits. Egbers testified that he documented events relating to the dependency in a service episode record system. The event log from this system was admitted into evidence.
¶ 6 Egbers was reassigned to G.A.R.'s case on December 15, 2003. He testified that at that time the parents had not complied with the court-ordered requirements in G.A.R.'s case, but there had been some compliance along the way. Egbers also testified that when he was reassigned to the case there was evidence that the parents had attended a psychological evaluation conducted by Dr. Elizabeth Nyblade. Dr. Nyblade's reports had been admitted into evidence. Egbers testified at length about the contents of Dr. Nyblade's reports and explained what he understood her diagnosis to mean.
¶ 7 With respect to Sieffert he was asked what Dr. Nyblade's assessment stated about her personality. Egbers stated, "I believe that she was diagnosed with personality disorder or NOS or not otherwise specified with borderline antisocial features." He was then asked to explain what Dr. Nyblade's diagnosis meant and how that diagnosis might affect her parenting. Specifically, Egbers testified that Sieffert's diagnosis meant that she would "not have the mental health to care for children."
¶ 8 Egbers then testified about the difficulties he experienced contacting the parents and their failure to visit G.A.R. He also testified that Sieffert had taken "very few" UAs and could recall "only . . . one" collected in September of 2003 that tested positive for methamphetamines. He further testified that Sieffert had undergone a drug and alcohol evaluation from Dellamas & Associates and said, "I believe they recommended outpatient treatment and random UAs." These reports also had been admitted into evidence.
*645 ¶ 9 The State asked Egbers whether the parents followed the recommendations from a parenting assessment done by William S. Mattila, which had been admitted into evidence. Egbers stated that they had not.
¶ 10 Egbers then testified that in his opinion the parents had been offered all services capable of correcting their deficiencies, there was little likelihood that conditions would be remedied so that the child could return home in the near future, a continuation of the parent/child relationship interfered with a permanent, stable home for the child, and it was in the child's best interests to have his parents' rights terminated.
¶ 11 Sieffert's counsel sat silent during Egbers' testimony. When Sieffert's counsel was asked whether he had any questions for Egbers, counsel responded, "Not at this time, Your Honor." He then was asked whether he had any evidence to present. Sieffert's counsel responded, "No, Your Honor." Finally, when asked if he had any final remarks, Sieffert's counsel stated, "Just briefly, Your Honor. I wish I had a case to present if my client were here, but other than that I do not have anything else." He also added in response to similar remarks by the father's counsel that he had made his best efforts to contact Sieffert and inform her of the hearing.
¶ 12 The court incorporated data from the reports of Dr. Nyblade, Mattila, and Dellamas & Associates into its findings of fact. The court called the reports clear, cogent and convincing. The court ordered G.A.R. into the permanent legal custody of DSHS.
¶ 13 Sieffert now appeals, claiming her counsel's performance was ineffective and thus was deprived of due process of law. She also challenges the sufficiency of the evidence used to support the trial court's termination order. Finally, Sieffert asks this court to seal the clerk's papers, verbatim report of proceedings, and exhibits.

ANALYSIS
Ineffective Assistance
¶ 14 This case is essentially the same as a recent published case from Division Three, In re the Welfare of J.M.[3] In J.M., the mother became distraught just before the termination hearing and left the courthouse, leaving her attorney alone to represent her. Just as in this case, the mother's attorney stipulated to the admission of relevant but highly damaging written reports by non-testifying experts. The reports all came into court by way of witnesses who were not experts in the relevant fields and could not be cross-examined as to the substance of the reports. The entire defense consisted of a simple statement by counsel that the mother emphatically disputed the allegations made in the case and that she thought it was "totally wrong" for the State to take her child away from her.[4] On appeal the mother argued that her counsel was ineffective and thus she was deprived of due process of law.
¶ 15 In J.M., the State and the mother argued over what the appropriate standard for legal representation should be in a parental rights termination proceeding. The State argued that the test should be whether the attorney was effective in providing a meaningful hearing, pursuant to In re Moseley.[5] The mother argued that the Strickland[6] test should apply. The J.M. court passed on the issue but instead held that the mother "did not receive effective assistance of counsel by any standard."[7]
¶ 16 In J.M., as in this case, the mother complained her counsel's failure to challenge the admissibility of psychological assessments and other expert recommendations brought in through live witnesses who were neither qualified as experts nor competent to testify as to events witnessed constituted ineffective assistance because fairness required an opportunity to test both the written expert opinions and the oral subjective accounts by confrontation and cross-examination. *646 In J.M., as in this case, counsel did nothing. The J.M. court found this to be ineffective.
¶ 17 In J.M., as in this case, the trial court relied on the reports as substantive evidence and incorporated them verbatim into its findings. Without trial counsel performing its role, the trial court could "only speculate as to what weaknesses in the State's case or strengths in [the mother's] case might have been revealed by competent counsel."[8] The J.M. court stated:
The potential loss of a significant and constitutionally protected liberty interest requires a meaningful hearing. This means, at a minimum, the opportunity to argue the strengths of one's own position and to attack the State's position. Here, we see no attempt to defend [the mother's] position or to attack the State's position. Counsel simply took the State's evidence at face value and recited that his client disagreed.[9]
The same can be said of this case.
¶ 18 Here, the State argues that Sieffert's attorney's decision not to test the State's case at all was a legitimate trial strategy, because by doing so he might have elicited even more damaging testimony. This argument is flawed because it presumes the authenticity and truth of the matters asserted in the reports and the witness's testimony. Sieffert's attorney's job was to test the authenticity of the reports and the accounts (much of it hearsay) related by the State's witness. Without having these reports or accounts put to the test, "[w]e can only speculate as to what weaknesses in the State's case or strengths in [the mother's] case might have been revealed by competent counsel."[10] This case is essentially the same as J.M. and is reversed for the same reasons stated therein.
¶ 19 Sieffert also contends the State failed to prove the facts supporting the termination of her parental rights by clear, cogent and convincing evidence because much of the evidence relied upon was evidence presented at the dependency hearings. We need not address this issue because we decide Sieffert's ineffective assistance of counsel claim in her favor.
Sealing of the Juvenile Court Record on Appeal
¶ 20 Sieffert asks the court to seal the clerk's papers, verbatim reports and exhibits based on former GR 15(c)(1)(B) and former GR 31(e)(1)(B). She does not ask to seal the briefing and motions filed directly with this court. Former GR 15(c)(1)(B) states in pertinent part:
Sealing of Files and Records. Subject to the provisions of RCW 4.24 and CR 26(j), on motion of any interested person in a criminal case or juvenile proceeding, or on the court's own motion, and after a hearing, the court may order the files and records in the proceeding, or any part thereof, to be sealed if the court finds that such action is expressly permitted by statute or that there are compelling circumstances requiring such action.
¶ 21 Former 15(c)(1)(B) has since been revised. The applicable rule is now contained in sections GR 15(c)(1)-(3). The rule now states:
(c) Sealing or Redacting Court Records.
(1) In a civil case, the court or any party may request a hearing to seal or redact the court records. In a criminal case or juvenile proceeding, the court, any party, or any interested person may request a hearing to seal or redact the court records. Reasonable notice of a hearing to seal must be given to all parties in the case. In a criminal case, reasonable notice of a hearing to seal or redact must also be given to the victim, if ascertainable, and the person or agency having probationary, custodial, community placement, or community supervision over the affected adult or juvenile. No such notice is required for motions to seal documents entered pursuant to CrR 3.1(f) or CrRLJ 3.1(f).

*647 (2) After the hearing, the court may order the court files and records in the proceeding, or any part thereof, to be sealed or redacted if the court makes and enters written findings that the specific sealing or redaction is justified by identified compelling privacy or safety concerns that outweigh the public interest in access to the court record. Agreement of the parties alone does not constitute a sufficient basis for the sealing or redaction of court records. Sufficient privacy or safety concerns that may be weighed against the public interest include findings that:
(A) The sealing or redaction is permitted by statute; or
(B) The sealing or redaction furthers an order entered under CR 12(f) or a protective order entered under CR 26(c); or
(C) A conviction has been vacated; or
(D) The sealing or redaction furthers an order entered pursuant to RCW 4.24.611; or
(E) The redaction includes only restricted personal identifiers contained in the court record; or
(F) Another identified compelling circumstance exists that requires the sealing or redaction.
(3) A court record shall not be sealed under this section when redaction will adequately resolve the issues before the court pursuant to subsection (2) above.
In regards to documents filed with the court, former GR 31(e)(1)(B) states:
(1) Except as otherwise provided in GR 22, parties shall not include, and if present shall redact, the following personal identifiers from all documents filed with the court, whether filed electronically or in paper, unless necessary or otherwise ordered by the Court.
. . . .
(B) Names of Minor Children. If the involvement of a minor child must be mentioned, only that child's initials shall be used, unless otherwise necessary.
This rule has been repealed. Sieffert's primary concern is for G.A.R. and his siblings who are mentioned by their full names in the juvenile court record. She is also concerned about the psychological evaluation and parenting assessment that she claims are confidential.
¶ 22 When this matter was heard in juvenile court, the court file was protected from public access by RCW 13.50.100. Chapter 13.50 RCW governs the keeping and release of records by juvenile justice or care agencies. RCW 13.50.100 governs records not relating to the commission of juvenile offenses. RCW 13.50.100(2) states, "Records covered by this section shall be confidential and shall be released only pursuant to this section and RCW 13.050.010." "Records" is defined as "the official juvenile court file, the social file, and records of any other juvenile justice or care agency in the case."[11]
¶ 23 Our Supreme Court has held these statutory provisions governing the confidentiality of juvenile court records below do not govern on appeal.[12] Rather, in the case In re Dependency of J.B.S., the court held that former GR 15(c)(1)(B) or the guidelines set forth in Seattle Times Company v. Ishikawa[13] govern whether the record, briefs, and arguments in an appellate review of a dependency proceeding are open to the public.[14] As such, the party wishing to seal the appellate record, in the absence of a controlling statute, must bring a motion to do so under GR 15 or Ishikawa.
¶ 24 In J.B.S., a Seattle newspaper filed a motion to open the appellate court hearings and unseal the record in a dependency action. In that case, the superior court placed J.B.S., a minor child and citizen of the United States, with his putative father, a non-citizen who resided in Mexico. The mother and the newspaper argued that RCW 13.34.110 (the statute excluding the general public from dependency hearings) and chapter 13.50 RCW (the statute governing the keeping and releasing of dependency records by juvenile *648 justice or care agencies) apply only to superior court hearings and do not require appellate court proceedings to be closed to the press or public. The newspaper argued that the record and proceedings should be open to the public because no motion had been brought under former GR 15(c)(1)(B) to seal them.
¶ 25 The J.B.S. court sided with the newspaper. First, it found that RCW 13.34.110, by its own terms, applied only to juvenile court proceedings. With regard to chapter 13.50 RCW, the J.B.S. court stated that the confidentiality requirement of RCW 13.50.100 governs only juvenile justice or care agencies, which includes only the juvenile or superior court. Similarly, the J.B.S. court observed that the statutory definitions of records and files under chapter 13.50 RCW refers only to the juvenile court and does not mention appellate records. Simply stated, because the statutes at issue did not address how the records should be treated on appeal, the statutes did not control public access to the records on appeal.
¶ 26 Instead, the court stated that "an appellate court has at its disposal both former GR 15 and the Ishikawa guidelines for deciding on a case-by-case basis whether open or closed hearings, briefs, or records are in the best interest of the child during appellate review of a dependency proceeding."[15] Specifically, the court held:
We hold RCW 13.34.110 and RCW 13.50 do not apply to appellate proceedings, and the record, briefs, and arguments in an appellate review of a dependency determination are open to the public unless a motion is granted under GR 15 or Ishikawa to close the proceedings.[16]
¶ 27 Sieffert argues that she has made the requisite showing under former GR 15(c)(1)(B), and the State all but concedes the point, stipulating to the sealing of those records so long as the sealing is "limited to the full names of the child and any siblings, all psychological, drug/alcohol, domestic violence and parenting evaluations and information relating to the parents, as well as any other documents and information which would be confidential at the dependency court level."
¶ 28 Changes have been made to the General Rules since J.B.S. that inform this issue. GR 15(g), added subsequent to the decision in J.B.S. states:
(g) Use of Sealed Records on Appeal. A court record or any portion of it, sealed in the trial court shall be made available to the appellate court in the event of an appeal. Court records sealed in the trial court shall be sealed from public access in the appellate court subject to further order of the appellate court.
For the purposes of GR 15, "[t]o seal means to protect from examination by the public or nonauthorized court personnel." "[T]he official juvenile court file, the social file, and records of any other juvenile justice or care agency" in this case, deemed confidential by RCW 13.50.100(2), were protected from examination by the public in the juvenile court and therefore sealed below for the purposes of GR 15(g). As such, we hold the records deemed confidential by RCW 13.50.100(2) and submitted to this court on appeal, whether in the nature of clerk's papers or exhibits, are sealed from public access on appeal subject to further order of the appellate court, pursuant to GR 15(g).
¶ 29 However, our holding does not extend to the verbatim reports, which were recorded in a public hearing and therefore not sealed below and not subject to GR 15(g). For these records we must determine whether the sealing of these reports is permissible under current GR 15 or Ishikawa. The Supreme Court stated in Ishikawa that courts take into account the following considerations:
1. The proponent of closure and/or sealing must make some showing of the need therefor. In demonstrating that need, the movant should state the interests or rights which give rise to that need as specifically as possible without endangering those interests.
. . . .

*649 2. "Anyone present when the closure [and/or sealing] motion is made must be given an opportunity to object to the [suggested restriction]."
. . . .
3. The court, the proponents and the objectors should carefully analyze whether the requested method for curtailing access would be both the least restrictive means available and effective in protecting the interests threatened.
. . . .
4. "The court must weigh the competing interests of the defendant and the public," and consider the alternative methods suggested. Its consideration of these issues should be articulated in its findings and conclusions, which should be as specific as possible rather than conclusory.
5. "The order must be no broader in its application or duration than necessary to serve its purpose. . . ." If the order involves sealing of records, it shall apply for a specific time period with a burden on the proponent to come before the court at a time specified to justify continued sealing.[17]
Here, G.A.R. and his minor siblings have expressed a privacy interest in keeping their full names from the public. The State has had an opportunity to object. Furthermore, we find that under the facts of this case, and in light of the arguments presented by the parties, G.A.R. and his minor siblings' interests in having their full names shielded from public view outweigh the public's interest in accessing the verbatim reports while they are here on appeal. Normally, redaction would seem the appropriate response to the minor's request. However, no process exists to accomplish that task while a case is pending on appeal. Hence, for this case, we order the verbatim reports be sealed while they are here on appeal.[18]
¶ 30 Because no process exists to redact the names of G.A.R. and his minor siblings from the verbatim reports while they are here on appeal, G.A.R. may move the trial court to have the verbatim reports redacted when they are returned to the trial court on remand. If the trial court grants G.A.R.'s motion to have the verbatim reports redacted below they will remain so on appeal pursuant to GR 15(g), if this case should ever return here.
¶ 31 For the above reasons, we reverse and remand for another hearing. Furthermore, we order the records deemed confidential by RCW 13.50.100(2) and submitted to this court on appeal, whether in the nature of clerk's papers or exhibits, be sealed. Finally, we order the verbatim reports of proceedings be sealed while here on appeal.
WE CONCUR: BECKER and AGID, JJ.
NOTES
[1] RCW 13.50.100(2).
[2] J.M., 130 Wash.App. 912, 125 P.3d 245 (2005).
[3] J.M., 130 Wash.App. 912, 125 P.3d 245.
[4] J.M., 130 Wash.App. at 919, 125 P.3d 245.
[5] In re Moseley, 34 Wash.App. 179, 184, 660 P.2d 315 (1983).
[6] Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
[7] J.M., 130 Wash.App. at 920, 125 P.3d 245.
[8] J.M., 130 Wash.App. at 925, 125 P.3d 245.
[9] J.M., 130 Wash.App. at 925, 125 P.3d 245 (citations omitted).
[10] J.M., 130 Wash.App. at 925, 125 P.3d 245.
[11] RCW 13.50.010(c).
[12] J.B.S., 122 Wash.2d 131, 856 P.2d 694 (1993).
[13] Ishikawa, 97 Wash.2d 30, 37-39, 640 P.2d 716 (1982).
[14] J.B.S., 122 Wash.2d at 140, 856 P.2d 694.
[15] J.B.S., 122 Wash.2d at 139, 856 P.2d 694.
[16] J.B.S., 122 Wash.2d at 140, 856 P.2d 694.
[17] Ishikawa, 97 Wash.2d at 37-39, 640 P.2d 716 (citations omitted).
[18] Because we are reluctant to order sealing on appeal as a general remedy, in the future parties should handle concerns over juvenile records in the trial courts prior to any appeal becoming ready for review.