This opinion was filed for record

at 8 a.m. on Oct. 4, 2018

Susan L. Carlson

SUSAN L. CARLSON
SUPREME COURT CLERK

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE OCT 0 4 2018
Fairhurst, CJ
CHIEF JUSTICE

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Dependency of E.H., a minor child. | ) ) ) ) ) ) | No. 94798-8 (consolidated with No. 94970-1) |
| In the Matter of the Dependency of S.K.-P., a minor child. | ) ) ) ) ) ) | En Banc<br><br>Filed OCT 0 4 2018 |

OWENS, J. — Dependency proceedings are not uniform, although each creates a tension between the State's ability to protect children as parens patriae and the fundamental familial rights of the people who are involved in the proceedings. In some instances, such as when the parents agree to the dependency or when the State does not assume legal or physical custody of the child, this tension will be lessened. In other instances, where the dependency is contested or when the State assumes custody of a child, the tension may be heightened. Accordingly, the amount of process due to children in dependency proceedings will vary with each case.

The legislature gave children a discretionary right to counsel in dependency proceedings in RCW 13.34.100(7)(a). The petitioners argue that our constitution

requires that all children be appointed counsel at all stages of the dependency proceedings. For the following reasons, we find that RCW 13.34.100(7)(a) is adequate under article I, section 3 of the Washington Constitution. Further, we find that in this case the trial court did not abuse its discretion in denying a motion to appoint counsel. Finally, in light of amendments to GR 15, we hold that confidential juvenile court records remain sealed and confidential on appeal, recognizing the abrogation of *In re Dependency of J.B.S.*, 122 Wn.2d 131, 856 P.2d 694 (1993). Accordingly, we grant the joint motion to seal.

## FACTS AND PROCEDURAL POSTURE

This matter involves two unrelated juveniles, E.H. and S.K.-P., in unrelated dependency proceedings. R.R., E.H.'s mother, and S.K.-P. both challenge the validity of RCW 13.34.100's discretionary standard for appointment of counsel for children in dependency proceedings and seek instead a categorical right to counsel for all children in dependency proceedings. We consolidated these cases to address that issue. R.R., S.K.-P., and the Department of Social and Health Services (Department) jointly moved to seal the appellate records and to use the parents' and children's initials in publicly filed documents. R.R. additionally challenges the juvenile court's denial of her motion for counsel for E.H.

*In re Dependency of E.H.*

2

In 2013, E.H.'s mother, R.R., was sent to prison in California with a scheduled release date in July 2019. She arranged for a family friend to live in the family home and care for her six children while she was incarcerated. Six months after assuming responsibility for the children, the friend sent three of the children (not including E.H.) to live with another friend, who physically and emotionally abused the children in his care. R.R. was not aware of this abuse as it was occurring.

In May 2014, the children moved into the home of another family friend, and the Department filed a dependency petition. R.R. entered an agreed order of dependency as to all six of her children in September 2014. E.H. was six years old when the dependency petition was filed, and it took about eight months to find a stable placement. E.H. and the siblings were placed in foster care in December 2014. E.H. was sent to three respite placements over the course of three months. Finally, on January 30, 2015, E.H. was placed in E.H.'s current foster home. E.H. has stated a strong desire to stay in the current placement until R.R. can return from prison.

E.H. has a court-appointed special advocate (CASA) who fulfills the role of a guardian ad litem (GAL) by representing and advocating for E.H.'s best interests throughout the dependency proceedings and informing the court of E.H.'s stated interests. At a February 2016 permanency planning hearing, the CASA supported a primary plan of terminating R.R.'s parental rights so that E.H. could be adopted. In May 2016, the CASA added guardianship as a secondary possibility based on E.H.'s

3

stated interest in family reunification, noting that E.H.'s current foster placement was a good environment and that the foster parents were willing to serve as long-term guardians. However, the CASA continued to advocate for termination of R.R.'s parental rights based on the CASA's assessment of E.H.'s best interests.

On August 17, 2016, R.R. filed a motion for appointment of counsel on E.H.'s behalf. A superior court commissioner denied the motion and the superior court denied the mother's motion to revise in a memorandum opinion. The court found no basis for construing the state due process protection more broadly than its federal counterpart after analyzing the *Gunwall* factors and therefore considered only whether the Fourteenth Amendment to the United States Constitution required appointment of counsel. *State v. Gunwall*, 106 Wn.2d 54, 62, 720 P.2d 808 (1986).

Beginning from the premise that there is no federal due process right to appointed counsel for all children in dependency cases, the court analyzed the *Mathews* factors as applied to E.H.'s case individually. *See Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). The court recognized the importance of the interests at stake, but also noted E.H.'s CASA was actively involved in E.H.'s case and had been forthright in conveying E.H.'s stated preferences to the court, even though the CASA believed those preferences were contrary to E.H.'s best interests. Critically, although E.H.'s CASA believed that termination of R.R.'s parental rights was in E.H.'s best interest and E.H. continued to desire reunification as a permanency

plan, at the time the motion for counsel was made termination was not an issue. The issues being addressed at that 90 day review hearing related to visitation between E.H. and E.H.'s siblings. E.H., E.H.'s CASA, and all persons present supported visitation. The court thus saw "no benefit to [E.H.] in appointing counsel at this juncture" and denied the motion to revise, noting that if the Department moved to terminate and E.H. remained opposed to that position, the issue of appointment of counsel would be revisited. Pet'r's Suppl. Br. (E.H.), J.A. at 10.

R.R. sought discretionary review. A commissioner at Division One of the Court of Appeals denied review, and the Court of Appeals denied the mother's motion to modify. This court granted the mother's motion for discretionary review and consolidated this case with *In re Dependency of S.K.-P.*

*In re Dependency of S.K.-P.*

S.K.-P. and two half-siblings were removed from their home after allegations of abuse. S.K.-P. was placed in S.K.-P.'s grandmother's home. Based on its most recent investigation, the Department filed a dependency petition in November 2014, when S.K.-P. was seven years old, and the court appointed S.K.-P. a GAL. In January 2015, S.K.-P.'s mother entered an agreed order of dependency, continuing S.K.-P.'s placement with the grandmother. In February 2015, S.K.-P.'s GAL filed a report with the court, stating that S.K.-P. reported no concerns with the placement and that S.K.-P. has everything S.K.-P. needs and feels safe in the home. In July 2015, the

GAL reported that S.K.-P. was having regular visitation with both parents. In September 2015, the court ordered that S.K.-P.'s mother could resume providing care.

Five days later, through an attorney who appeared for the limited purpose of the motion only, S.K.-P. moved for appointed counsel. With the motion, S.K.-P. submitted a declaration expressing a desire for maternal placement but challenging visits by the father. The father had no relationship with S.K.-P. prior to the dependency, and according to the grandmother, he was "known for illegal activity in the community and for perpetrating domestic abuse against [S.K.-P.'s] mother." Clerk's Papers (S.K.-P.) at 29. S.K.-P. had previously reported to the CASA frightening thoughts of being removed and placed with the father. S.K.-P. therefore declared, "I want an attorney to help me with these things and help tell the judge what I want." *Id.* at 138.

S.K.-P.'s mother supported the motion, but the Department opposed it and S.K.-P.'s GAL was neutral. The court held a hearing and then entered an order denying the motion for counsel without prejudice. The trial court found that based on the *Mathews* factors, there was no need to appoint counsel because S.K.-P.'s interests were adequately safeguarded by the GAL and by S.K.-P.'s mother, who was represented by counsel and whose interests aligned with S.K.-P.'s.

The Court of Appeals granted S.K.-P.'s motion for discretionary review, in which she argued that all children have the right to attorneys in dependency

proceedings. On that same day, the Department dismissed S.K.-P.'s dependency petition, and S.K.-P. was returned to the mother's custody. *In re Dependency of S.K.-P.*, 200 Wn. App. 86, 92, 401 P.3d 442 (2017). On its own motion, the court considered whether to dismiss the appeal as moot.

In light of this court's guidance in *Sorenson v. City of Bellingham*, 80 Wn.2d 547, 496 P.2d 512 (1972), the Court of Appeals declined to dismiss and ultimately held that children in dependency proceedings do not have a categorical right to counsel. Instead, the Court of Appeals held that juvenile courts should continue to use the *Mathews* balancing test to appoint counsel on a case by case basis. *S.K.-P.*, 200 Wn. App. at 92. S.K.-P. filed a petition for review, which this court granted, and consolidated with *In re Dependency of E.H.*, 189 Wn.2d 1030 (2017).

## ISSUES

1.     Is the mechanism for appointment of counsel for children contained within RCW 13.34.100(7) sufficient to protect the due process rights of children in dependency proceedings under article I, section 3 of the Washington Constitution?

2.     Did the juvenile court abuse its discretion by denying the motion to appoint counsel for E.H.?

3.     Should the joint motion to seal the records of these consolidated cases be granted?

ANALYSIS

1.    Facial Procedural Due Process Challenge and the Right to Counsel

Our current statutory law grants children a discretionary right to counsel. A child, a parent, a guardian, a caregiver, or the Department may petition the court to appoint counsel at public expense to represent a child in a dependency proceeding. RCW 13.34.100(7)(a). The court may also appoint an attorney on its own initiative. *Id.* In 2012, this court addressed whether this discretionary right, along with the right to appellate review, was sufficient under the United States Constitution's guaranty of due process at termination proceedings. *In re Dependency of M.S.R.*, 174 Wn.2d 1, 20, 271 P.3d 234 (2012). We are now tasked with answering whether RCW 13.34.100(7)(a) is sufficient at the dependency stages and under the state constitution's corollary provision.

The appellants contend that the state due process clause is more protective than its federal counterpart and that therefore *M.S.R.* does not control. *See M.S.R.*, 174 Wn.2d at 20 n.11 (declining to address state constitutional claims). This opinion turns first to our recent state precedent holding that in similar contexts, article I, section 3 should not be interpreted independently of its federal counterpart before using the *Gunwall* factors to support that conclusion.

### A. This Court Should Consider Federal Precedent

#### i. *Recent State Precedent*

In 2011, this court applied the *Gunwall* factors to determine whether, in the context of appointment of counsel for children in initial truancy hearings, the state due process clause was broader than the federal counterpart. *Bellevue Sch. Dist. v. E.S.*, 171 Wn.2d 695, 714, 257 P.3d 570 (2011). We found that it was not. *Id.* Turning to federal guidance, we found that procedural due process did not require appointment of counsel for children in initial truancy hearings, notwithstanding the potential of a future contempt order stemming from the initial truancy hearing. *Id.*

More recently, in *In re Welfare of A.W.*, this court held that in the context of a dependency guardianship proceeding,[1] "[t]he Washington Constitution, article I, section 3, does not afford greater due process protection than the United States Constitution." 182 Wn.2d 689, 701-02, 344 P.3d 1186 (2015). In *A.W.*, this court held that the establishment of a dependency guardianship by a mere preponderance of the evidence was adequate under both the federal and state due process clauses. *Id.* at 702-03.

---

[1] Dependency guardianships are statutory alternatives to the termination of parental rights. *In re Guardianship of D.S.*, 178 Wn. App. 681, 682, 317 P.3d 489 (2013). They are one example of a dependency proceeding (*see* JuCR 3.11). *A.W.* is a recent, well-reasoned, post-*Gunwall* precedent where this court found that article I, section 3 should be interpreted consistent with its federal counterpart in the specific context of dependency proceedings.

In 2012, this court addressed whether discretionary appointment of counsel for children at termination hearings satisfied federal due process requirements. *In re Dependency of M.S.R.*, 174 Wn.2d at 20. We unanimously found that the *Mathews* test, applied on a case-by-case basis, provided adequate protection. *Id.* Although we did not reach the state constitutional question due to waiver, *see id.* n.11, if we had grave concerns about the article I, section 3's independent protections, we could have used our inherent authority to reach the issue (*Alverado v. Wash. Pub. Power Supply Sys.*, 111 Wn.2d 424, 429, 759 P.2d 427 (1988) (*WPPSS*)) or directed the parties to submit supplemental briefing on that issue.

Thus, our recent precedent supports a finding that article I, section 3 should not be interpreted independently from its federal counterpart in the context of appointment of counsel for children. The same outcome would be reached through applying the *Gunwall* factors to this specific case.

ii. Gunwall *Analysis*

In *Gunwall*, we set forth the following nonexclusive factors to be considered when determining whether a provision of the state constitution should be interpreted independently of its corresponding federal constitutional provision: "(1) the textual language; (2) differences in the texts; (3) constitutional history; (4) preexisting state law; (5) structural differences; and (6) matters of particular state or local concern." 106 Wn.2d at 58.

The first, second, and third factors all support applying federal precedent because the texts are "nearly identical," and there is no legislative history supporting an independent analysis. *See State v. Wittenbarger*, 124 Wn.2d 467, 480, 880 P.2d 517 (1994); *State v. Ortiz*, 119 Wn.2d 294, 303, 831 P.2d 1060 (1992).

The fourth factor, preexisting state law regarding appointment of attorneys for children, also does not support independent analysis. Historically, the statutory and common law viewed the presence of a guardian as necessary to protect the interests of children who were parties to an action for so long as they suffered under the incapacity of infancy. *See* CODE OF 1881, ch. I, § 12. The common law incapacity of minors persists, with two exceptions for actions relating to domestic violence and child truancy. RCW 4.08.050. Thus, the general rule in Washington has historically been that children cannot appear in court as parties and must instead appear by and through guardians. This cuts against any finding that the state due process clause expands protections for the appointment of attorneys for children, as historically children have not had the right to appear in court at all, let alone with counsel.[2]

---

[2] The dissent cites *In re Dependency of J.H.*, 117 Wn.2d 460, 477, 815 P.2d 1380 (1991) in support of the proposition that children are parties in dependency proceedings. Dissent at 15. This court's statement that the "[l]egislature has determined that children involved in dependency and termination actions are parties to those actions" was dicta and supported by a citation to RCW 13.34.100. *J.H.*, 117 Wn.2d at 477. When *J.H.* was published, RCW 13.34.100 stated in part that "[t]he court, at any stage of a proceeding under this chapter, may appoint an attorney and/or guardian ad litem for *a child who is a party to the proceedings*. . . ." Former RCW 13.34.100 (1979) (emphasis added). That statute was amended in 1993, after *J.H.* was published, and the above italicized portion was removed. RCW 13.34.100 (1993). *See* Laura

The fifth factor, structural differences between the state and federal constitution, supports independent interpretation of the state constitution in every case. *State v. Foster*, 135 Wn.2d 441, 458-59, 957 P.2d 712 (1998) (plurality opinion). The sixth factor, whether the matters are of particular state interest or local concern, more accurately addresses whether there "appear[s] to be a need for national uniformity" regarding the subject matter. *Gunwall*, 106 Wn.2d at 62. There is no need for national uniformity for procedures in dependency hearings, and thus the sixth factor favors independent state analysis.

On balance, the *Gunwall* factors support utilizing federal guidance. Only the fifth and sixth factors support independent analysis. The other four factors, as well as our recent precedent in the dependency context, holding that article I, section 3's protections are coextensive with the Fourteenth Amendment's, support following federal precedent regarding when a case-by-case approach to appointment of counsel is appropriate. *See A.W.*, 182 Wn.2d at 701-02.

B.     Federal Guidance Supports a Case-by-Case Approach

The purpose of the test set forth in *Gunwall* is to determine when and to what extent "'[f]ederal precedent in areas addressed by similar provisions in our state

---

Baird, Note, *An Inconsistent Invitation: Am I Invited To Be a Party? How Not Affording Party Status to Youth in Washington Dependency Hearings Can Be a Violation of Due Process*, 11 SEATTLE J. FOR SOC. JUST. 715 (2013). This opinion does not take any position on whether children are parties in dependency proceedings and notes the incapacity of infancy only to support the conclusion that preexisting state law regarding appointment of attorneys for children is not more protective than federal law.

constitutions can be meaningful and instructive.'" *Gunwall*, 106 Wn.2d at 60

(quoting *State v. Hunt*, 91 N.J. 338, 363, 450 A.2d 952 (1982) (Handler, J.,

concurring)). The United States Supreme Court addressed the issue of whether

indigent parents have a categorical right to representation in termination proceedings.

*Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 26, 101 S. Ct. 2153, 68 L. Ed. 2d 640

(1981). In applying the case-by-case approach, the *Lassiter* Court relied on an earlier

case, *Gagnon*, which addressed whether due process required the appointment of

counsel at public expense for indigent probationers in probation revocation hearings.

*Id.* (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656

(1973)). Although it addressed counsel in a different type of proceeding, the

reasoning in *Gagnon* supports applying the case-by-case approach in the dependency

setting.

In *Gagnon*, the Court identified a number of factors that were relevant in

finding a case-by-case approach appropriate. *Gagnon*, 411 U.S. at 789. First, the

court noted the rehabilitative purpose of probation hearings and that the flexibility that

hearing boards are afforded in those proceedings allows them to exercise both a quasi-

judicial role as a fact finder and an equitable role in helping probationers reintegrate

into society. *Id.* at 786-89.

Second, in contrasting probation revocation hearings with criminal trials, the

Court noted that in criminal trials the State is represented by a prosecutor, that the

formal rules of evidence are in force, that there are a number of procedural rights that may be waived by a criminal defendant if not timely raised, and that communicating arguments to untrained jurors may be aided by the assistance of counsel. *Id.* In probation revocation hearings, the State is represented not by a prosecutor but by a parole officer, who has a dual interest in rehabilitation and protecting the public from recidivism. *Id.* Likewise, evidentiary and procedural rules are relaxed in probation proceedings. *Id.* Finally, the members of the hearing board, the ultimate decision-makers, "are familiar with the problems and practice" of the system. *Id.* at 789.

Because of these differences, the Court held that "[t]he need for counsel at revocation hearings derives, not from the invariable attributes of those hearings, but rather from the peculiarities of particular cases." *Id.* Therefore, rather than create what it called "a new inflexible constitutional rule with respect to the requirement of counsel," the Court left the decision as to the need for counsel to be made on a case-by-case basis. *Id.* at 790. This approach makes sense in dependency proceedings, where the State assumes the protective responsibilities of parents.

Dependency proceedings are more similar to probation revocation hearings than criminal hearings, in particular as they relate to the children who are the subject of the proceedings. Unlike the parents, who stand in equipoise with the State and whose interests are more directly adverse to the State's, a child's relationship with the Department is similar to a probationer's with a probation officer. The purpose of a

dependency hearing is to serve and protect the best interests of the child, and that purpose makes those hearings orthogonal to truly adversarial proceedings.

Furthermore, the State is not always a party, let alone represented by counsel. Dependency petitions may be brought by "[a]ny person." RCW 13.34.040(1). Family members can petition a court to find a child dependent in order to be granted guardianship over the child. Juveniles themselves may initiate dependency actions in order to gain a predicate order to obtain special juvenile immigrant status and the resulting relief from removability. 8 U.S.C. § 1101(a)(27)(J). When a private party initiates a dependency petition, the Department is not involved, and, as in *Gagnon*, there is not an asymmetry of representation. Similarly, the rules of evidence do not necessarily apply in dependency proceedings. *See* JuCR 1.4; ER 1101(c)(3) (evidence rules inapplicable in disposition, review, and permanency planning hearings). And, as in probation revocation hearings, the decision-maker in dependency hearings is not a jury in need of explanation, but a judicial officer who is familiar with the system. Accordingly, as in *Gagnon*, a case-by-case system for appointment of counsel in dependency proceedings is more appropriate than a categorical approach.

The *Gagnon* Court noted that in certain cases, fundamental fairness requires the appointment of counsel at public expense and listed some scenarios in which this would presumptively be the case. *Gagnon*, 411 U.S. at 790. Those scenarios included when the underlying facts are disputed, when the reasons given in opposition

of the deprivation of liberty are complex or otherwise difficult to develop or present, and when the person requesting counsel is not capable of speaking effectively for himself or herself. *Id.* at 790-91. In addition to the age and custodial status of the child, courts should consider whether a particular scenario warrants appointment.

When a child disputes the facts that form a basis for a dependency, when a child presents a complex or sophisticated argument against the State's proposed decision, or when a child old enough to voice a preference is rendered voiceless in the proceedings because his or her stated wishes are misaligned with his or her GAL's assessment of his or her best interests, appointment of counsel is likely proper.

Further, the Court in *Gagnon* required that in every case, the basis for the denial of a request for counsel be "stated succinctly in the record." *Id.* at 791. We agree with this requirement, as well, to preserve the additional safeguard of appellate review. *See M.S.R.*, 174 Wn.2d at 21. To protect against challenges to dependency proceedings, we urge trial courts to sua sponte raise the issue of representation for children at the earliest practicable time in the proceedings.

Finally, while the United States Supreme Court in *Lassiter* held that the *Mathews* test was appropriate for a case-by-case determination of whether an indigent parent in a termination proceeding was entitled to counsel, it held that courts must then set the net weight of the *Mathews* elements against the presumption that there is a right to appointed counsel only where the requester's personal freedom is at risk.

*Lassiter*, 452 U.S. at 27. The source of that presumption was federal precedent. *Id.* at 26 (citing *Scott v. Illinois*, 440 U.S. 367, 99 S. Ct. 1158, 59 L. Ed. 2d 383 (1979)). Because no such state precedent applies, it does not follow that a federal presumption against counsel should be imported into this analysis. Therefore, the burden of a movant requesting counsel for a child is the preponderance standard, and movants need not rebut any presumption against appointment of counsel.

C.     Independent State Constitutional Analysis

Although we hold that federal precedent should be used to guide our reasoning, the due process protection in our state constitution is generally the same as the federal guaranty, even in the context of dependency proceedings.[3] For regardless of whether we turn to federal guidance to interpret the state protection, the true "question is what the state's guarantee means and how it applies to the case at hand." *Malyon v. Pierce County*, 131 Wn. 2d 779, 798 n.30, 935 P.2d 1272 (1997). Because the *Mathews* test is adequate to ensure procedural due process protections under both the state and federal constitutions, the question of RCW 13.34.100(7)(a)'s constitutionality under either is largely the same.

---

[3] The continued viability of the state constitutional analysis of *In re Welfare of Myricks*, 85 Wn.2d 252, 255, 533 P.2d 841 (1975) and *In re Welfare of Luscier*, 84 Wn.2d 135, 138, 524 P.2d 906 (1974) is not presented in this case, nor is it questioned by this opinion. Both of those cases predated both *Gunwall* and *Mathews*. The contemporary analysis used to determine what protections article I, section 3 provides is different from the analysis employed in those opinions. Those opinions have stood for 40 years, and stare decisis protects their holdings.

Our state guaranty of due process shares the same basic concerns as the federal counterpart. A procedural due process challenge under our state provision turns on whether the increased decisional accuracy afforded by additional procedure to safeguard against an erroneous deprivation of a private interest is outweighed by the State's legitimate reasons for denying more protections. *See E.S.*, 171 Wn.2d at 717 (Chambers, J., dissenting) ("Nevertheless, the balancing test adopted by the United States Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), offers a valuable tool when determining what is required under article I, section 3 as well as the Fourteenth Amendment to the United States Constitution.").

This analysis requires us to compare the status quo to the procedures sought and identify (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335; *E.S.*, 171 Wn.2d at 705.

Here, the comparison to be made is between the current statutory regime, in which children have a discretionary right to petition for counsel, and a strict rule under which all children in dependency proceedings must be represented by attorneys,

absent waiver. Applying the *Mathews* factors to this inquiry, the appropriateness of a case-by-case approach is made all the more clear.

First, the private interest will vary depending on the circumstances. In some cases, such as when a child is found dependent due to the abuse or neglect of one parent under RCW 13.34.030(6)(b) but remains in the legal and physical custody of the other parent, the child's interests will be very low. Likewise, even if a child is found dependent with regard to both parents, the statutory preference for placement is with relatives. RCW 13.34.060(2), .138(2)(c)(viii). Thus, in many instances, the State does not assume custody of the child and does not make important decisions about placement, medical care, or education.

Second, the amount of decisional accuracy added by adopting the proposed rule of automatic appointment of counsel is based on both the increased decisional accuracy afforded by attorneys when they are constitutionally warranted and the likelihood that the current case-by-case approach fails to appoint an attorney when one is required. If the current system leads to the appointment of counsel whenever it is constitutionally required, then the proposed automatic appointment rule provides no additional constitutional protections. This calculation is exceedingly difficult, as whether counsel is required depends on the facts of each underlying case.

Further, the amount of increased decisional accuracy afforded by an attorney will vary. Procedural due process protects against erroneous state actions. This will

occur in the dependency setting only when the State abridges a child's liberty based on an erroneous determination of the best interest of that child. If a child's stated interests are indeterminable due to infancy or if they are aligned with his or her GAL's assessment of what is in his or her best interest, then the increased decisional accuracy of an attorney will likely be low. While there may be substantial policy arguments supporting the appointment of attorneys for children to decrease the duration of dependencies and increase the children's comfort and agency in the courtroom, it is only the value with regard to decreasing erroneous deprivations of liberty that is considered under procedural due process. Those other policy arguments are legislative in nature and should be balanced against other public interests and concerns. *See* SUBSTITUTE H.B. 1251, 65th Leg., Reg. Sess. (Wash. 2017); S.B. 5363, 65th Leg. Reg. Sess. (Wash. 2017) (proposed amendments to RCW 13.34.100 that would grant a categorical right of counsel to all children in dependency proceedings).

Finally, the government's interest against adopting a categorical requirement of representation is high. Concerns include both cost and practicability, as some counties may be faced with a shortage of attorneys for children. *See* ENGROSSED SUBSTITUTE S.B. REP. 6126, 63d Leg., Reg. Sess. (Wash. 2014). Requiring the appointment of counsel prior to removal, as petitioners request, lessens the State's ability to expediently protect at-risk children. Because each family is different, each

dependency proceeding is different. Those differences are accounted for in the flexibility afforded to trial courts under the current case-by-case regime, and that flexibility is a boon to the State's ability to protect children.

Thus, analyzing the state provision independently from its federal counterpart, the discretionary right to counsel granted to children in dependency proceedings is adequate under our state's due process guaranty.

### D. *Mathews* Remains the Test for Appointment of Counsel

For the above reasons, we find that the statutory scheme regarding appointment of counsel for children is constitutionally adequate under article I, section 3 of the Washington Constitution. However, we emphasize that in many instances due process might require appointment of counsel, and that trial courts should address the issue of appointment of counsel on the record at as early a time as is practicable, to preserve the right of appeal.

In determining whether counsel is required, courts are to apply the *Mathews* factors on a case-by-case basis, taking into account the specific interests at risk in each instance, the additional decisional accuracy that would be afforded by appointing an attorney, and the government's interest in not appointing counsel. *Mathews*, 424 U.S. at 335. Although not an exhaustive list, courts should consider at least the age of the child, whether the child is in legal or physical custody of the State, whether the child's stated interests are aligned with the GAL's assessment of the child's best

interest (if a GAL has been appointed) or with another represented party's desires, whether the child disputes the facts that form a basis for the dependency determination, whether the child presents a complex argument against the State's proposed action, and the issues that are actually disputed or to be addressed in the hearing.

2.    The Trial Court Did Not Err in Denying E.H. Counsel

In addition to the facial challenge to the statutory scheme, E.H. challenges the denial of the motion for appointment of counsel for E.H. in that case.[4] While categorical *Mathews* challenges are questions of pure law, whether E.H. individually was entitled to an attorney under the *Mathews* test is a mixed question of law and fact. As such, the standard of review typically "depends—on whether answering it entails primarily legal or factual work." *U.S. Bank Nat'l Ass'n v. Vill. at Lakeridge, LLC*, ___U.S. ___, 138 S. Ct. 960, 967, 200 L. Ed. 2d 218 (2018). The constitutional nature of the issue "favors de novo review even when answering a mixed question primarily involves plunging into a factual record." *Id.* at n.4. Thus, on appeal, the determination of whether an attorney was constitutionally required under *Mathews* is

---

[4] The dissent purports to dissent only in part, as it relates to E.H.'s as applied challenge. Dissent at 30. In actuality, the dissent presents a facial challenge to RCW 13.34.100's discretionary appointment mechanism and seeks its invalidation categorically for all children in dependency proceedings. Dissent at 2–22.

performed de novo, with deference given to the factual findings made by the trial court in the first instance, where appropriate.

In this case, the *Mathews* factors did not require appointment of counsel. This is chiefly because of the "specific circumstances . . . at the time the motion for appointed counsel [wa]s made." Dissent at 23 (citing *M.S.R.*, 174 Wn.2d at 22 n.13). The particular interest that was at risk of erroneous deprivation when the motion was made involved E.H.'s visitation with siblings. No decisions regarding placement were at issue. At the time the motion was made, being returned to R.R.'s care was not an option due to her incarceration. Nor was the Department moving to terminate R.R.'s parental rights. E.H. had been living in the same foster placement for over two years, and there was no indication in the record of any concerns regarding the safety or stability of that placement. Thus, the interest at risk of being erroneously deprived when the motion was made was E.H.'s interest in sibling visitation.

Without minimizing that interest, under the *Mathews* prong, that interest is of a comparatively lesser constitutional magnitude than an interest in physical autonomy or medical or educational decisions, although it is a recognized liberty interest.

Under the second *Mathews* prong, however, it is unclear what additional decisional accuracy an attorney for E.H. would have provided the trial court in making its decision regarding visitation. Many of the parties present had attorneys, and their interests overlapped with E.H.'s. E.H.'s CASA was present and stated

E.H.'s interest in visits. The trial court identified the exemplary performance of the parties, attorneys, and GALs at raising issues regarding visitation preemptively and quickly, and stressed that there was not an imminent risk of an erroneous deprivation. There was no misalignment between E.H. and E.H.'s CASA regarding visitation, and thus the risk of an erroneous deprivation of that interest was low.

The trial court accurately identified that the State's primary interest was reaching permanent and safe placement for E.H. and that that interest was not frustrated by the appointment of counsel for E.H. It also identified a financial interest, and while that interest is not sufficient to deny a safeguard to protect against an erroneous deprivation, at the time the motion for counsel was made, appointing counsel for E.H. would not have added any meaningful protections regarding the only issue being addressed at that time. Everyone present agreed that sibling visitation was appropriate. Thus, the denial of that motion for appointment of counsel, brought at that time, was not error.

The commissioner noted that if the Department moved to terminated R.R.'s parental rights and E.H. remained at odds with the CASA's recommendation, the issue of appointment of counsel should likely be reconsidered. The Department has moved to terminate, and this court stayed consideration of those proceedings pending the publication of this decision. Once that stay is lifted, the trial court should

reconsider the appropriateness of counsel for E.H. in light of this decision, applying the *Mathews* test to the particular interests E.H. is at risk of erroneously losing.

### 3.    The Record Is Sealed under GR 15(g)

The parties jointly moved to seal records in the underlying juvenile court files and the appellate files in this matter, and to require the use of initials to protect the identity of the children and parents involved in these disputes. A commissioner of the Court of Appeals has granted much of this relief. The remaining request is to seal the trial court records contained in appellate files. The parties' joint GR 15 motion to seal these records is granted. Further, to provide guidance to future parties and intermediate appellate courts, we hold that trial court records of nondelinquency juvenile court hearings should remain sealed on appeal, recognizing GR 15(g)'s abrogation of *J.B.S.*, 122 Wn.2d at 137-38.

RCW 13.50.100 provides that records of juvenile court hearings not relating to juvenile offenses "shall be confidential" and proscribes limited instances in which they may be released. RCW 13.50.100(2). In 1993, this court held that the requirement of confidentiality contained in RCW 13.50.100 does not apply to appellate court proceedings based on the definition of "court" contained elsewhere within the Juvenile Court Act. *J.B.S.*, 122 Wn.2d at 135. Thus, this court found that a GR 15 motion to seal is required to seal such records. *Id.* at 137. It directed lower courts to use the *Ishikawa* factors when determining whether to grant such a motion

but, resolving the matter on statutory interpretation grounds, did not reach the constitutional question of whether article I, section 10 applies to juvenile records. *See id.* at 137-38; *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 38, 640 P.2d 716 (1982).

Two significant changes have occurred since this court's decision in 1993. First, in 1997, GR 15 was amended to include a new provision. Second, we addressed the constitutional question that we declined to reach in *J.B.S.* and ruled that under the experience and logic test, article I, section 10 does not apply to juvenile records. *See State v. S.J.C.*, 183 Wn.2d 408, 352 P.3d 749 (2015).

In 1997, GR 15 was amended to include what is now GR 15(g): "Use of Sealed Records on Appeal." *See In re Dependency of G.A.R.*, 137 Wn. App. 1, 13, 150 P.3d 643 (2007). That provision provides that "[c]ourt records sealed in the trial court shall be sealed from public access in the appellate court subject to further order of the appellate court." GR 15(g). As the Court of Appeals in *G.A.R.* held, GR 15(g) preserves the confidentiality of juvenile court files and records. *G.A.R.*, 137 Wn. App. at 13. This new provision partially abrogated *J.B.S.* to the extent that our opinion in that case held that confidential trial records are unsealed on appeal. Accordingly, records that are confidential under RCW 13.50.100(2) remain confidential on appeal, subject to the exceptions provided in RCW 13.50.100 and RCW 13.50.010. Such records should be sealed from public access without need for a party to bring a GR 15 motion to seal.

## CONCLUSION

Under both the state and federal constitutions, the discretionary standard for appointment of counsel in RCW 13.34.100(7)(a) provides children with sufficient due process protection, provided that juvenile courts apply the *Mathews* factors on the record at an early practicable time and without a presumption against appointment of counsel. Review of a juvenile court's denial of appointed counsel should be performed de novo, with due deference given to findings of fact made by the juvenile court in the first instance. We are confident in the ability of trial judges to perform this function, as the *Mathews* test is familiar to judges and has proved capable of protecting procedural due process for decades. On review of the record, we affirm the denial of R.R.'s motion for an attorney for E.H.

We grant the joint motion to seal the appellate record. To provide clarity to intermediate appellate courts, we reach the question of whether such a motion is necessary, given the 1997 amendments to GR 15. Recognizing the abrogation of *J.B.S.*, 122 Wn.2d 135, by the promulgation of GR 15(g), we hold that the confidential nature of dependency proceedings granted by RCW 13.50.100(2) is not lost through appeal. Accordingly, courts of appeal should sua sponte seal the records and appendices of such proceedings, except as provided for in RCW 13.50.100 and RCW 13.50.010.

*In re Dependency of E.H. and S.K.-P.*
No. 94798-8 (consolidated with No. 94970-1)

WE CONCUR:

*In re Dependency of E.H. and S.K.-P.*
(Stephens, J., concurring in part and dissenting in part)

94798-8

STEPHENS, J. (concurring in part, dissenting in part)—I join the lead opinion in all respects save for its resolution of the parties' motion to seal the record. I agree with Justice Gordon McCloud's partial dissent that the motion to seal should be denied under article I, section 10 of the Washington State Constitution.

No. 94798-8

GORDON McCLOUD, J. (concurring in part and dissenting in part)—I agree

with the lead opinion that both RCW 13.34.700(7)(a) and the due process clause of

the Washington Constitution provide a child with the right to counsel in dependency

proceedings in certain circumstances. WASH. CONST. art. I, § 3. I write separately for

two reasons: (1) to highlight the fact that all members of this court now agree that a

trial court must consider certain key factors before making that decision about

appointment of counsel, *see* lead opinion at 21; dissent at 20, and (2) to dissent from

the decision to seal the records of all dependency cases from public view, even on

appeal.

With regard to the first issue—the child's right to appointment of counsel

during a dependency proceeding—the lead opinion and the dissent agree on one key

point. They agree that before making a decision on whether to appoint counsel, the

trial court must consider "[whether the] child disputes the facts that form a basis for

a dependency, [whether the] child presents a complex or sophisticated argument

against the State's proposed decision," and whether "a child old enough to voice a

1

preference" about the dependency voices a position different from the position advanced by the guardian ad litem. Lead opinion at 16; *see also* dissent at 26. Full consideration of these and any other factors raised by the parties when considering whether to appoint counsel for the child should go a long way towards addressing the problems detailed in the dissent. Dissent at 23-25.

However, I disagree with the lead opinion's resolution of the parties' joint motion to seal the record in this court. The lead opinion holds that *State v. S.J.C.*, 183 Wn.2d 408, 352 P.3d 749 (2015), and GR 15(g) authorize the appellate courts to seal the complete record in all dependency proceedings—regardless of anything in article I, section 10 of the Washington Constitution to the contrary. Lead opinion at 25-26. However, article I, section 10 does indeed say something to the contrary: it provides that "[j]ustice in all cases shall be administered openly." WASH. CONST. art. I, § 10. It does not have an exemption for cases involving juveniles (or adults) in dependency proceedings.

The lead and dissenting opinions reason that *S.J.C.* already held that article I, section 10—despite its clear and categorical ("all cases") language—does not apply to the dependency proceedings at issue in this case.

I respectfully disagree. *S.J.C.* addressed one issue, and it concerned the sealing of dispositions in juvenile criminal cases—not dependency cases. As the introduction to the opinion in that case clearly stated, the question before the court

2

was "whether article I, section 10 of the Washington Constitution requires the court to apply the *Ishikawa*[1] factors when a former juvenile offender has satisfied the statutory requirements of former RCW 13.50.050 (2011) to seal his or her juvenile court record." *S.J.C.*, 183 Wn.2d at 411 (footnote omitted).

To be sure, I disagreed with the decision in that case to exempt juvenile criminal proceedings from that constitutional protection. *S.J.C.*, 183 Wn.2d at 435 (Stephens, J., dissenting). But I do not rest my assessment of the parties' motion to seal the record in this case on a prior dissent. Instead, I rest it on the fact that the question presented here is different from the question presented there—this case involves the record of a dependency proceeding. *S.J.C.* involved the record of a criminal disposition held in juvenile court specifically to avoid the stigma, formalities, and nonrehabilitative adverse consequences of an adult criminal conviction, and it based its decision on our state's historical treatment of such juvenile criminal dispositions. *S.J.C.*, 183 Wn.2d at 418-19.

For that reason, I would deny the parties' agreed motion to discard the constitutional protection that "justice shall be administered openly" in all courts of our state. I fear that we are carving out courts to shield from public view one by one—first, juvenile courts, *S.J.C.*, 183 Wn.2d at 435 (Stephens, J., dissenting); next,

---

[1] *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 37-39, 640 P.2d 716 (1982).

certain therapeutic courts, *State v. Sykes*, 182 Wn.2d 168, 339 P.3d 972 (2014); and now, dependency proceedings.

While I concur in the lead opinion's holding on the due process question presented by this case, I respectfully dissent from its conclusion that dependency proceedings can now join the growing list of cases that are exempt from the benefits that the constitutional guaranty of open courtrooms, open court files, and open government was supposed to bring to the people.

No. 94798-8

YU, J. (dissenting in part) — Our jurisprudence has evolved in its

understanding that children have cognizable rights and protected interests. We

have correspondingly grown in our recognition that children's rights and interests

are entitled to legal protection. Therefore, "the law has constructed a constitutional

wall around juveniles, maintaining its integrity through a continuous process of

refining its contours and repairing its cracks." *State v. S.J.C.*, 183 Wn.2d 408, 413,

352 P.3d 749 (2015). Today, the lead opinion abruptly reverses course, rejecting

the progress we have made and reverting to the view that children in dependency

cases are commodities to be allocated, not individuals to be heard. I cannot join

the lead opinion's retreat to a perspective that treats children as mere "chattels

incident to adult domestic relations." *Id.*

The dependency case involving S.K.-P. has been dismissed. *In re*

*Dependency of S.K.-P.*, 200 Wn. App. 86, 92, 401 P.3d 442, *review granted*, 189

1

Wn.2d 1030, 408 P.3d 1094 (2017). Therefore, reversing the ruling denying appointed counsel in E.H.'s case on a narrow, case-by-case basis would be sufficient to resolve the pending issues presented. Further, I agree that the joint motion to seal should be granted. I thus respectfully dissent in part.

However, I must register my deep concern at the lead opinion's conclusion that article I, section 3 has no independent meaning in this context and, therefore, provides no protections beyond the minimum required by the Fourteenth Amendment. WASH. CONST. art. I, § 3; U.S. CONST. amend XIV. It is clear from our cases and statutes that all children in dependency cases are continuously at risk of being erroneously deprived of their most fundamental rights. It has also been repeatedly shown that an attorney representing the child's position dramatically decreases that risk. It is apparent, however, that our current discretionary approach to appointing counsel for children in dependency cases has failed to protect children's state due process rights.

## ANALYSIS

A.     The discretionary, case-by-case approach to appointing counsel for children in dependency cases violates the Washington Constitution

All children in dependency cases unquestionably have significant, substantive rights pursuant to Washington law, including the right to state their positions and to have those positions represented in court. RCW 13.34.090(1). As

clearly recognized by our legislature's provision that an attorney may be appointed to represent the child's position, we cannot assume the child's interests will be aligned with the State's in any case. RCW 13.34.100(7)(a). However, the unguided discretion that trial courts currently have in appointing counsel allows for inconsistent practices that leave many children with no voice and no one to advocate for their rights. This arrangement does not satisfy the heightened due process protections provided in this context by article I, section 3.

1.    Article I, section 3 is more protective of a child's right to appointed counsel in dependency cases than the Fourteenth Amendment is

"In determining the meaning of a state constitutional provision, 'the focus is on whether the unique characteristics of the state constitutional provision and its prior interpretations actually compel a particular result.'" *State v. Pugh*, 167 Wn.2d 825, 835, 225 P.3d 892 (2009) (internal quotation marks omitted) (quoting *State v. Chenoweth*, 160 Wn.2d 454, 463, 158 P.3d 595 (2007)). Therefore, "context matters when we are determining whether to independently analyze the state due process clause." *Bellevue Sch. Dist. v. E.S.*, 171 Wn.2d 695, 711, 257 P.3d 570 (2011). The specific context presented here is a child's right to representation in a dependency case. In this context, the *Gunwall*[1] factors and

---

[1] *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986)

recent precedent lead me to conclude that article I, section 3 is more protective

than the Fourteenth Amendment.

> a. The *Gunwall* factors are evenly split because preexisting state
> law supports an independent interpretation

I agree that the first three *Gunwall* factors do not support an independent

interpretation of article I, section 3, while the fifth and sixth factors do. Lead

opinion at 10-12. However, I would hold that the fourth factor (preexisting state

law) does support an independent interpretation, leaving the nonexclusive *Gunwall*

factors evenly split.

In evaluating preexisting state law, we must "consider the degree of

protection that Washington State has historically given in similar situations."

*Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 809,

83 P.3d 419 (2004). The question is not whether Washington has historically

accorded children extensive due process rights generally. It is whether

Washington law has been more protective than federal law in the context

presented. Historical statutory and common law demonstrate a long-standing

commitment in Washington State to providing representation for children in

dependency cases and similar contexts. Such a commitment is noticeably and

unsurprisingly lacking in historical federal law because, as the Supreme Court of

the United States has noted, any question about familial relationships "'belongs to

the laws of the States and not to the laws of the United States.'" *Rose v. Rose*, 481

U.S. 619, 625, 107 S. Ct. 2029, 95 L. Ed. 2d 599 (1987) (quoting *In re Burrus*, 136

U.S. 586, 593-94, 10 S. Ct. 850, 34 L. Ed. 500 (1890)).

It is true that historically, Washington has required that children who are

parties in a court case must appear by guardian. Lead opinion at 11. However, it

is *not* true that this long-standing requirement "cuts against any finding that the

state due process clause expands protections for the appointment of attorneys for

children, as historically children have not had the right to appear in court at all, let

alone with counsel." *Id.* *Gunwall* is a threshold inquiry. Therefore, the fourth

*Gunwall* factor asks whether state law has historically been *more protective* than

the federal constitution, not whether historical state law *already recognizes* the

particular right at issue. *Gunwall*, 106 Wn.2d at 61-62. A provision that a child

shall appear through a representative is unquestionably more protective of a child's

right to representation than no provision at all.

Washington's historical practice of having children appear through a

guardian reflects Washington's overall historical protections, "particularly in

disputes touching on the rights and protection of minors." *In re Parentage of L.B.*,

155 Wn.2d 679, 696-97, 122 P.3d 161 (2005) (citing *Borenback v. Borenback*, 34

Wn.2d 172, 208 P.2d 635 (1949) (citing *Allen v. Allen*, 28 Wn.2d 219, 182 P.2d 23

(1947); *Mitchell v. Mitchell*, 24 Wn.2d 701, 166 P.2d 938 (1946); *Lindblom v.*

*Lindblom*, 22 Wn.2d 291, 155 P.2d 790 (1945); *Flagg v. Flagg*, 192 Wash. 679, 74

P.2d 189 (1937); *Wixson v. Wixson*, 172 Wash. 151, 19 P.2d 912 (1933))). These

protections "extend[ ] considerably greater protections to our citizens in this regard

than do comparable federal statutes and rulings thereon." *Gunwall*, 106 Wn.2d at

66. Most notably, for federal purposes, "[n]early everyone would identify 1967 as

the most important year in the history of counsel for children in the United States."

Martin Guggenheim, *Reconsidering the Need for Counsel for Children in Custody,

Visitation and Child Protection Proceedings*, 29 LOY. U. CHI. L.J. 299, 301 (1998).

By that time, "[m]ost of the practices prescribed by the Supreme Court were

already in place in Washington." *S.J.C.*, 183 Wn.2d at 424.

Preexisting state law thus shows Washington has historically granted more

procedural protections for children's representation in court than federal law has

done. The fourth *Gunwall* factor supports an independent interpretation, leaving

the *Gunwall* factors evenly split.

> b.    Recent court and legislative decisions confirm that article I,
>        section 3 should be interpreted independently in this context

Because the six *Gunwall* factors are explicitly nonexclusive, we should

resolve the split by looking to recent decisions by this court and the legislature.

"[T]his court has been zealous in its protection of familial relationships," and the

legislature has consistently and repeatedly built on earlier law to increase

procedural protections for children's representation in family law cases. *In re Dependency of M.S.R.*, 174 Wn.2d 1, 15-16, 271 P.3d 234 (2012). The substance and direction of this recent law show that article I, section 3 of the Washington Constitution provides more protection than the Fourteenth Amendment in this context.

Over 30 years ago, this court recognized in an action to determine parentage that "[a] child must not be a party in name only. It is fundamental that parties whose interests are at stake must have an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *State v. Santos*, 104 Wn.2d 142, 147, 702 P.2d 1179 (1985) (quoting *Olympic Forest Prods., Inc. v. Chaussee Corp.*, 82 Wn.2d 418, 422, 511 P.2d 1002 (1973)). A few years later, we reemphasized that "children involved in dependency and termination actions are parties to those actions and entitled to representation. Children have a right to be represented by a guardian ad litem or an attorney *or both*, who have the right to fully participate in all proceedings." *In re Dependency of J.H.*, 117 Wn.2d 460, 477, 815 P.2d 1380 (1991) (emphasis added) (footnotes omitted).[2] And in 2005, we strongly urged

---

[2] I do not cite *J.H.* in connection to the fourth *Gunwall* factor or in relation to the issue, not presented here, of whether a child is a party in some technical sense. *Contra* lead opinion at 11 n.2. I cite it as recent precedent indicating a consistent trend of providing growing protections for a child's right to representation in family law cases. The legislative amendment referred to by the lead opinion is irrelevant to this purpose, as it merely changed the phrase "a child who is a party to the proceedings" to "a child who is the subject of an action." LAWS OF 1993, ch. 241,

trial courts "to consider the interests of children in dependency, parentage, visitation, custody, and support proceedings, and whether appointing counsel, *in addition to and separate from* the appointment of a [guardian ad litem], to act on their behalf and represent their interests would be appropriate and in the interests of justice." *L.B.*, 155 Wn.2d at 712 n.29 (emphasis added). Relevant recent precedent thus recognizes significant, consistently growing procedural protections for children's representation in dependency and similar family law cases.

Additionally, the legislature has taken important steps to provide for appointed counsel for children in dependency and termination cases that exceed federal statutory protections. Within the past 10 years, the legislature has enacted statutes that (1) require the State and the guardian ad litem (GAL) or court appointed special advocate (CASA) to notify all children who are at least 12 years old that they have a right to request counsel, (2) require appointment of counsel for children six months after all parental rights have been terminated, and (3) permit judges to appoint counsel for children in all dependency proceedings on a case-by-case basis. LAWS OF 2010, ch. 180, § 2; LAWS OF 2014, ch. 108, § 2. By comparison, Congress has enacted only "a limited statutory right of representation

---

§ 2(1). There is no indication that this amendment was intended to limit a child's right to representation, and I do not see how it could do so.

(though not necessarily by attorney) . . . as a condition for receiving federal funds." *M.S.R.*, 174 Wn.2d at 14 n.7 (citing 42 U.S.C. §§ 5101-5107).

The lead opinion renders these legislative efforts largely meaningless by holding that a child's statutory right to counsel in a dependency case is coextensive with the right to counsel that a child *already has* pursuant to the federal due process clause. Lead opinion at 21-22. In addition, the recent cases the lead opinion points to are of little to no relevance in this context. *Id.* at 9-10 (citing *E.S.*, 171 Wn.2d 695; *In re Welfare of A.W.*, 182 Wn.2d 689, 344 P.3d 1186 (2015); *M.S.R.*, 174 Wn.2d 1).

*E.S.* considered a child's right to appointed counsel only "in the context of an initial truancy proceeding," explicitly stated that the "right to counsel in a context entirely outside the scope of truancy is not instructive," and specifically declined to give weight to cases concerning the right to counsel in dependency cases. 171 Wn.2d at 711-13. Moreover, the court declined to find a right to appointed counsel in *E.S.* because the petitioner "failed to show *any* private interest that was affected by the initial truancy hearing." *Id.* at 708 (emphasis added). The same cannot possibly be said of any hearing in a dependency case.

*A.W.* did consider a similar type of case, but an entirely different aspect of due process. It did not consider appointment of counsel for anyone, much less for children. *A.W.* considered only the applicable burden of proof in a dependency

guardianship. 182 Wn.2d at 703. Further, it expressly did *not* consider the child's

rights as independent of the parent's rights because "[t]he State must assume that

the interests of the parent and the child converge until the State proves by the

requisite standard that there is parental unfitness," which of course cannot happen

until the requisite standard is defined. *Id.* at 707 n.16. *A.W.* is therefore not

instructive on the issue presented.

Finally, the outcome of *M.S.R.* is entirely irrelevant to determining whether

the state constitution is more protective than the federal. *M.S.R.* explicitly did not

reach any state constitution claims because they were inadequately briefed. 174

Wn.2d at 20 n.11. We have the authority to request additional briefing, but this

court's declining to reach inadequately briefed issues is not proof that we are

unconcerned with the merits. *Contra* lead opinion at 10. Treating it as such

inappropriately disregards the basic structure of appellate proceedings in which the

*parties* have both the right and the duty to brief the issues as they see fit. It also

sets dangerous precedent, inviting parties to assume we have implicitly decided

issues that our published opinions explicitly declined to address.

Therefore, while the nonexclusive *Gunwall* factors are evenly split, recent

cases and statutes conclusively show that article I, section 3 is more protective than

the Fourteenth Amendment of a child's right to representation in a dependency

case. And because I would analyze Washington's due process clause

independently in this context, the assertion that for federal due process purposes, a child in a dependency case is similarly situated to an adult in a probation revocation hearing is irrelevant. *See* lead opinion at 13-16 (discussing *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973)). I simply note that such a comparison is entirely inappropriate as a matter of fact, and as a matter of law, it is contrary to our precedent's explicit guidance that "context matters." *E.S.*, 171 Wn.2d at 711.

2.      Article I, section 3 requires consistent practices for appointing counsel to represent children in dependency cases

I agree that for both state and federal purposes, a procedural due process analysis requires consideration of the private and government interests at stake, the risk of erroneous deprivation, and the value of additional procedural safeguards. Lead opinion at 17-18. However, the lead opinion (despite its insistence that the federal constitution controls) purports to conduct an independent state analysis without accounting for relevant features of state law. *Id.* at 17-21. "When a state court neglects its duty to evaluate and apply its state constitution, it deprives the people of their 'double security.'" *Alderwood Assocs. v. Wash. Envtl. Council*, 96 Wn.2d 230, 238, 635 P.2d 108 (1981) (quoting THE FEDERALIST NO. 51, at 339 (A. Hamilton or J. Madison) (Modern Library ed., 1937)). The lead opinion effects just such a deprivation here.

I would hold that in light of the interests and rights at stake in dependency proceedings specifically as a matter of state (as opposed to federal) law, it is clear that the current, case-by-case approach to appointing counsel does not satisfy article I, section 3.

Every dependency case implicates the protected interests and statutory rights of every child involved. *M.S.R.*, 174 Wn.2d at 17-18. And in every dependency case, the child faces at least some risk that he or she will be erroneously deprived of his or her rights. Without any statutory guidance as to when counsel should be appointed to protect the child's rights, though, each child is subject to the policies and viewpoint of the particular court presiding over the case, limited only by the minimum requirements of constitutional due process. This system does not sufficiently protect the significant substantive rights at stake for children in dependency proceedings.

> a.    All children have protected interests and statutory rights at stake in dependency cases

Every child in a dependency case has the same interests and faces the same risks at various points in the proceedings. The most obvious protected interest at risk is the child's interest in maintaining continuous relationships with his or her family. "In a dependency or termination proceeding . . . the child is at risk of not only losing a parent but also relationships with sibling(s), grandparents, aunts,

uncles, and other extended family." *Id.* at 15. This risk is far more important than

the lead opinion today realizes. *See* lead opinion at 23.

> [T]he importance of the familial relationship, to the
> individuals involved and to the society, stems from the
> emotional attachments that derive from the intimacy of
> daily association, and from the role it plays in
> promot[ing] a way of life through the instruction of
> children as well as from the fact of blood relationship.

Once we recognize that the child's interest in his or her familial bonds
is constitutionally protected, and that familial bonds stem not just
from biology, but also from the intimacies of daily association, then it
logically follows that a child has a constitutionally protected interest
in whatever relationships comprise his or her family unit.

*In re Custody of Shields*, 157 Wn.2d 126, 152, 136 P.3d 117 (2006) (Bridge, J.,

concurring) (alterations in original) (citations and quotation marks omitted)

(quoting *Smith v. Org. of Foster Families for Equal. & Reform*, 431 U.S. 816, 844,

97 S. Ct. 2094, 53 L. Ed. 2d 14 (1977)). Therefore, "maintaining the integrity of

the family relationships, including the child's parents, siblings, and other familiar

relationships" is a protected liberty interest that every child has and that every child

risks losing in a dependency case. *M.S.R.*, 174 Wn.2d at 20.

However, damage to family relationships is only one of the many risks

children in dependency cases face. Unlike a parent, a child in a dependency case

may be "physically removed from the parent's home." *Id.* at 16. Regardless of

whether the child is placed with relatives or in the care of the State, removal has

enormous consequences for every aspect of the child's life. "Children who are removed from their parents' care face a loss of physical liberty and may be forced to change homes, schools, and care facilities. Such movement may cause children significant harm." *In re Dependency of Lee*, 200 Wn. App. 414, 450, 404 P.3d 575 (2017), *review denied*, 190 Wn.2d 1006, 415 P.3d 99 (2018).

Where a child in a dependency case is in the care of his or her parents or other relatives, the child has the right to a safe, secure, and appropriate placement to protect his or her physical liberty and bodily integrity. *M.S.R.*, 174 Wn.2d at 16-17. But where a child is removed from his or her parents' care and cannot be placed with a relative or someone else the child knows, the child must "face the daunting challenge of having his or her person put in the custody of the State as a foster child, powerless and voiceless, to be forced to move from one foster home to another." *Id.* at 16. All children in foster care have "substantive due process rights that the State, in its exercise of executive authority, is bound to respect," particularly the "right to be free from unreasonable risk of harm, including a risk flowing from the lack of basic services, and a right to reasonable safety." *Braam v. State*, 150 Wn.2d 689, 698-99, 81 P.3d 851 (2003).

In addition to these constitutionally protected interests, every child has the statutory right "to be heard in his or her own behalf." RCW 13.34.090(1). This right is not merely my view of the best policy or a nicety that may be offered to

14

"increase the children's comfort and agency in the courtroom." Lead opinion at 20. It is the legislature's declaration, consistent with this court's decisions, that a child in a dependency case has the "right to fully participate in all proceedings." *J.H.*, 117 Wn.2d at 477 (citing RCW 13.34.090, .100; JuCR 9.2(b)(1)). This is crucial because "[w]hen adjudicating the 'best interests of the child,' we must in fact remain centrally focused on those whose interests with which we are concerned, recognizing that not only are they often the most vulnerable, but also powerless and voiceless." *L.B.*, 155 Wn.2d at 713 n.29.

Thus, every dependency case implicates fundamental rights that every child has in accordance with Washington law. As discussed further below, all children who are not represented by attorneys are placed at an unacceptably high risk of being erroneously deprived of their rights in a dependency case. Despite these common interests and risks, however, the current, unguided, discretionary system for appointing counsel ensures that whether a child will have an attorney varies depending on which court is considering his or her case.

> b.    The risk that a child without an attorney will be erroneously deprived of protected interests and rights is unacceptably high, and the current discretionary system does not mitigate that risk

"While an adult may have an understanding of substantive and procedural issues, and court process, children are at great risk of misunderstanding both." Amy E. Halbrook, *Custody: Kids, Counsel and the Constitution*, 12 DUKE J.

CONST. L. & PUB. POL'Y 179, 212 (2016). Such misunderstandings create an extremely high risk that unrepresented children in dependency cases will be deprived of their protected interests and statutory rights, with potentially devastating consequences.

The State places great emphasis on the procedural protections already in place for children, including their right to an appointed GAL or CASA and the possibility of counsel being appointed on a discretionary, case-by-case basis. However, an appointed GAL or CASA does not play the same role as an attorney representing the child's position and does not mitigate the risk of erroneous deprivation as an attorney does. Moreover, the current discretionary system for appointed counsel is not sufficient to ensure that counsel will be appointed in all (or even most) cases where it is necessary to protect the child's rights.

It has been empirically shown that children who are not represented by attorneys are routinely erroneously deprived of their most fundamental protected interests and statutory rights, even when they have an appointed GAL or CASA. For instance,

> youth who were appointed an attorney at the first dependency hearing were 20 percent more likely to reside with known persons instead of foster parents than those children appointed attorneys sometime after the initial shelter care hearing (and 27 percent more than those children without an attorney until after termination of parental rights).

Amicus Curiae Br. of Legal Counsel for Youth & Children at 13. All children

have the right to be placed with people they know instead of the foster care system

where possible. RCW 13.34.130(5). But whether that right is actually protected

varies, depending on whether the child has an attorney.

In addition, a child might not know that he or she had the right to "'speak up

if he didn't feel good in a placement.'" Amici Curiae Br. of Ctr. for Children &

Youth Justice & Mockingbird Soc'y (CCYJ) at 5 (quoting ALICIA LEVEZU,

CHILDREN & YOUTH ADVOCACY CLINIC AT UNIV. OF WASH., DEFENDING OUR

CHILDREN: A CHILD'S ACCESS TO JUSTICE IN WASHINGTON STATE 5 (Aug. 2016)

(*Defending Our Children*), http://cdcasa.org/wp-content/uploads/2017/01/UW-

Study-2016-Defending-Our-Children.pdf [https://perma.cc/5KUG-Z8L6]). If the

child is being abused or neglected in that placement, he or she may become trapped

in an even more perilous situation than the one that existed before the dependency

case began. It is unlikely that a child who has been placed in an abusive situation

by the State will know that he or she has a right to be heard unless that right is

explained to the child by an attorney. Even a child who does know his or her

rights, however, will likely "stop[ ] seeing the value in expressing his opinion and

[begin] to feel lost in the system" after being subjected to inappropriate placements

or frequent moves without anyone to advocate for the child's position. *Id.* at 10.

The fact that children who have a GAL or CASA but no attorney are more likely to be erroneously deprived of their rights is not surprising because "GALs and CASAs are not trained to, nor is it their role to, protect the legal rights of the child." *M.S.R.*, 174 Wn.2d at 21. Instead, their statutorily mandated role is "[t]o represent and be an advocate for the best interests of the child." RCW 13.34.105(1)(f). In some cases, the child's stated position might align with the State's view of the child's best interests, but in many cases, their positions will diverge. "[C]ourtroom observers recently found that CASA[ ]s and GAL[ ]s 'only presented arguments to support the child's position 30 [percent] of the time.'" Amici Curiae Br. of CCYJ at 13 (quoting *Defending Our Children* at 22). This is a disturbingly low figure and may still underestimate how often the child's position goes unrepresented because without an attorney to act as the child's confidential counselor, it can be more difficult to ascertain what the child's position actually is.

"Unlike GALs or CASAs, lawyers maintain confidential communications, which are privileged in court." *M.S.R.*, 171 Wn.2d at 21. An attorney can therefore encourage a child to freely express what he or she thinks and wants, and can honestly promise not to divulge information the child wants to keep private. GALs and CASAs cannot because they are required to "report to the court any views or positions expressed by the child on issues pending before the court." RCW 13.34.105(1)(b).

In addition to making it more difficult for a child to communicate honestly, the GAL's or CASA's mandatory reporting duty might be mistakenly viewed as giving the child a sufficient voice in the proceedings. *E.g.*, *S.K.-P.*, 200 Wn. App. at 110; State Dep't of Soc. & Health Servs. Suppl. Br. at 14. A GAL or CASA is charged with reporting the child's position, not representing it. These are two different functions, clearly reflected by the fact that the legislature provides for both discretionary appointment of counsel to "represent" the child's position and mandatory appointment of a CASA or GAL to "report" it. RCW 13.34.100(7)(a), .105(1)(b).

An appointed GAL or CASA is not a confidential counsel or advocate. An appointed attorney is. When children have attorneys, the risk that they will be erroneously deprived of their protected interests and statutory rights drops dramatically.

Because all children have fundamental, substantive interests and rights in their dependency cases, one might reasonably assume that all similarly situated children will receive appointed counsel on the same basis so their voices can be heard and their legal rights can be protected. One might also reasonably assume that a court's discretionary decision whether to appoint counsel would necessarily involve careful consideration of case-specific factors, including the child's age and mental capacity, the child's ability to express his or her preferences, whether the

19

child's expressed preferences differ from the GAL's or CASA's assessment of the child's best interests, whether the child's position is being adequately represented in the proceedings, and the complexity of the underlying facts or legal issues.

Unfortunately, such reasonable assumptions would be misplaced. The discretionary and unguided nature of our current statute has resulted in inconsistent practices, such that "'[w]hether or not a child is represented by an attorney in a dependency proceeding depends largely on local practices in the county where the child's case is heard.'" Amicus Curiae Br. of Legal Counsel for Youth & Children at 17 (quoting OFFICE OF FAMILY & CHILDREN'S OMBUDS, 2013 ANNUAL REPORT 55 (Jan. 2014), http://ofco.wa.gov/wp-content/uploads/ofco_2013_annual.pdf [https://perma.cc/GN75-UNBZ]). "In fact, across Snohomish, King and Pierce counties, the discretionary appointment of counsel at hearings occurred for *less than 1* [*percent*] of all children without advocates." Amici Curiae Br. of CCYJ at 15 (emphasis added) (citing *Defending Our Children* at 28). This circumstance is both unethical and unconstitutional.

As reflected by the plain language of RCW 13.34.100(7)(a), the legislature's intent was to ensure that counsel would be appointed where needed to represent the child's position. The legislature has also attempted to increase the likelihood of appointed counsel by requiring the State and the GAL or CASA to notify all children who are at least 12 years old that they have a right to request counsel.

RCW 13.34.100(7)(c). However, Washington courts have not consistently honored the legislature's intent. In practice, courts may deny counsel on the basis that there are no "extreme circumstances" or "simply conclude[ ] that the parents themselves were sufficient to perform the services of independent counsel." Clerk's Papers at 329; *Lee*, 200 Wn. App. at 450. Children deserve more careful consideration of their protected rights, and they are entitled to it in accordance with article I, section 3 of the Washington Constitution.

      c.     No countervailing government interests justify the risks that unrepresented children face in dependency cases

In every dependency and termination case, "the State has a compelling interest in both the welfare of the child and in 'an accurate and just decision.'" *M.S.R.*, 174 Wn.2d at 18 (quoting *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981)). However, these interests would be furthered, not hindered, by appointing counsel for children in dependency cases.

Trial courts cannot ascertain what is in the child's best interests by simply deferring to a CASA's or GAL's position. Courts must instead consider the positions of *all* the parties and reach their own conclusions. They cannot do so if the child's position is not represented. Therefore, the State's most compelling interests support the same result as the private interests at stake for the child: appoint counsel to represent the child's position. The only countervailing interest

21

the State has is saving money, but "[f]inancial cost alone is not a controlling weight," particularly when the private interests at stake are as fundamentally important as a child's interests in a dependency case are. *Mathews v. Eldridge*, 424 U.S. 319, 348, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

Considering the interests at stake and the high risk of erroneous deprivation under the current system, it is apparent that the Washington Constitution demands what the majority of states already provide: every child in a dependency or termination case who cannot afford a private attorney is presumptively entitled to appointed counsel. CHILDREN'S ADVOCACY INST. & FIRST STAR, A CHILD'S RIGHT TO COUNSEL: A NATIONAL REPORT CARD ON LEGAL REPRESENTATION FOR ABUSED & NEGLECTED CHILDREN 10 (3d ed. 2012) [https://perma.cc/Y6BD-DDVA]; Am. Amicus Curiae Br. of Children's Rights, Inc., et al. at 19.

The lead opinion is wrong to conclude otherwise.

B.      E.H. is entitled to appointed counsel pursuant to the Fourteenth Amendment

In addition to my strong disagreement with the lead opinion's analysis of article I, section 3, I would hold that E.H. is entitled to appointed counsel on a case-by-case basis even under the minimal protections of the federal constitution. I would therefore reverse and remand for counsel to be appointed for E.H.

The Fourteenth Amendment does not categorically require appointment of counsel for all children in dependency cases. *M.S.R.*, 174 Wn.2d at 22. However,

children do have the right to a thoughtful analysis of their "individual and likely unique circumstances" when courts are deciding whether to appoint counsel on a case-by-case basis. *Id.* This analysis requires courts to consider carefully the specific context of the individual case to determine whether "'the particular situation demands'" appointment of counsel. *Mathews*, 424 U.S. at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)). E.H.'s particular situation demands that an attorney be appointed to represent him and to advocate for his position.

1.    A case-by-case analysis must account for the particular interests that are currently at risk of erroneous deprivation

The trial court correctly recognized that E.H. could be appointed counsel on a case-by-case basis and that he had a "significant private interest" at stake. Pet'r's Suppl. Br., Corrected J.A. at 9. However, it is not sufficient in a case-by-case analysis to recite the interests that are generally at stake for any child at some point in a dependency case. If the case-by-case analysis is to be meaningful, it must account for the specific circumstances and the particular child at the time the motion for appointed counsel is made. *M.S.R.*, 174 Wn.2d at 22 n.13.

The court here, however, noted only the generally applicable risks that every child faces at some point in a dependency proceeding, including "removal from home, the possibility of repeated placements in foster care and the dangers of being

23

returned to an unsafe home with biological parents who are not truly ready to assume care of the child." Pet'r's Suppl. Br., Corrected J.A. at 9. At the time, those were not the interests currently at risk for E.H.

He had already been removed from his home, not by the State but by his mother because she needed to make arrangements for him and his siblings while she was incarcerated. The dependency petition was filed only after E.H. was abused and neglected by the family friends entrusted with his care. Although it took about eight months to find a suitable foster home for E.H., he had been living with his foster parents since January 2015, nearly two years before the motion to appoint counsel was considered. He remains there today, and the record reveals no concerns about the stability or safety of his current placement. And being returned prematurely to his mother's home (which the record does not indicate was unsafe in the first place) was not an available option at the time due to her incarceration.

Thus, the generalized interests recited by the trial court do not accurately reflect the individualized interests actually at risk for E.H. when his mother moved to appoint counsel for him. It is therefore not surprising that the court saw "no benefit to [E.H.] in appointing counsel at this juncture." *Id.* at 10. At that time, there was no risk that E.H. would be erroneously deprived of the interests that the court recognized. And contrary to the lead opinion's view, the fact that the motion to appoint counsel was initially heard by a commissioner at a review hearing where

visitation was also at issue does not mean that visitation was the only interest at risk for E.H.[3] Lead opinion at 23-24. E.H.'s mother did not move to appoint counsel for that specific review hearing; she moved to appoint counsel for E.H. in all of the proceedings going forward.

In fact, there was an intolerably high risk that E.H. would be erroneously deprived of important protected interests when his mother moved to appoint counsel for him. E.H., like every child in Washington, has a protected statutory right "to be heard in his or her own behalf" and a protected liberty interest in maintaining relationships with his family. RCW 13.34.090(1); *M.S.R.*, 174 Wn.2d at 15-16. E.H. has already been erroneously deprived of the former, and the latter was, and still is, at risk of erroneous deprivation, a risk that continues to increase over time.

2.     E.H. has been erroneously deprived of his right to be heard

As discussed above, E.H. has the right to be heard in his own behalf. RCW 13.34.090(1). This unambiguous statutory right gives rise to a protected liberty interest, and under the particular circumstances presented, E.H. has been erroneously deprived of it. At the time of the motion for appointed counsel, the

---

[3] The decision of the superior court commissioner is not before us. *Contra* lead opinion at 24. The motion to appoint counsel was decided by a superior court judge following a motion to revise the commissioner's decision. *Id.* at 4. In a motion for revision, a judge reviews a commissioner's decision de novo, and appellate courts review only the judge's decision. *Faciszewski v. Brown*, 187 Wn.2d 308, 313 n.2, 386 P.3d 711 (2016).

risk of erroneous deprivation was very high because E.H.'s position was (and remains) directly at odds with the position of his CASA and the State: E.H. wants to reunite with his mother, while the CASA and the State argue that termination of parental rights is in his best interests. When the court denied appointed counsel, that high risk became a certainty, and E.H. was erroneously deprived of his right to be heard.

Although E.H. cannot reunite with his mother right now, she is scheduled to be released in July 2019, when E.H. will still have almost half of his childhood ahead of him. In the meantime, he is in a stable placement with foster parents who are willing to serve as long-term guardians for him. He has maintained a close relationship with his mother, and she has made every possible effort to remain an important part of his life. The CASA acknowledges long-term guardianship would be a means of accomplishing E.H.'s goal of reunification but still advocates for termination. An attorney who is not advocating for termination might be able to come up with other solutions as well.

"The paramount goal of child welfare legislation is to reunite the child with the legal parents if reasonably possible." *In re Parental Rights to K.J.B.*, 187 Wn.2d 592, 597, 387 P.3d 1072 (2017). This paramount goal remains in place, even where the parent is incarcerated. *Id.* at 598-99. E.H. thus has a clearly stated

position favoring reunification, and there is no apparent reason why that outcome is not a reasonable possibility in accordance with the law of this state.

The trial court noted that the CASA, though "somewhat leery," reported E.H.'s stated position to the court in accordance with her statutory duty. Pet'r's Suppl. Br., Corrected J.A. at 10; *see* RCW 13.34.105(1)(b). However, the position of the State and the CASA, that termination is in E.H.'s best interests, directly conflicts with E.H.'s stated desire to reunite with his family.

The CASA is required to represent and advocate for termination in order to comply with her statutory duties, but termination and reunification are mutually exclusive outcomes. RCW 13.34.105(1)(f). No one could possibly advocate for both at the same time. The CASA's assessment of E.H.'s best interests therefore make it impossible for her to represent his position. As discussed above, reporting a child's position while strongly advocating against it does nothing to protect a child's right to be heard. And in E.H.'s case, the CASA has an attorney to represent and advocate for her position. E.H., who has far more at stake in this case than the CASA ever will, does not.

Once E.H. and the CASA diverged on their respective positions, there was no way for E.H. to exercise his right to be heard in his own behalf without appointed counsel. The trial court's ruling denying appointed counsel was therefore an erroneous deprivation of that right. I would reverse.

The lead opinion appears to agree, noting that "when a child old enough to voice a preference is rendered voiceless in the proceedings because [his or her] stated wishes are misaligned with [the CASA's] assessment of [the child's] best interests, appointment of counsel is likely proper." Lead opinion at 16. That is precisely E.H.'s situation. I therefore do not understand how the lead opinion can affirm the ruling denying counsel for him on a case-by-case basis. *Id.* at 24.

3.    Without counsel, E.H. faces an unacceptably high risk of being erroneously deprived of his family relationships

E.H. also has a protected liberty interest in maintaining his relationships with his family. *M.S.R.*, 174 Wn.2d at 15-16; RCW 13.34.020. This includes visitation with his siblings as well as his mother because "familial bonds stem not just from biology, but also from the intimacies of daily association." *Shields*, 157 Wn.2d at 152 (Bridge, J., concurring). At the time the trial court denied appointed counsel, E.H. faced a high risk of being erroneously deprived of his protected interest in his family relationships.

In E.H.'s case, leaving open the possibility of appointing counsel when the State petitioned for termination of parental rights was not sufficient to diminish this risk. *Contra* lead opinion at 24. Dependency and termination proceedings do not deal with discrete events having isolated effects, but with the ongoing life, relationships, and well-being of the child and his or her family. Everything that

28

happens in a dependency case can affect what happens in a subsequent termination case. And while not all dependencies lead to termination, for E.H., termination of parental rights was not, and is not, "merely potential or hypothetical." *E.S.*, 171 Wn.2d at 705. Reunification is supposed to be the goal of dependency proceedings. RCW 13.34.020; *K.J.B.*, 187 Wn.2d at 597. However, the CASA was already recommending termination as the most appropriate outcome when the trial court denied the motion to appoint counsel. The possibility of termination has steadily increased since then.

Notably, while review was pending before this court, E.H.'s mother filed an emergency motion to stay the trial court proceedings. The case was about to move to the termination stage, with the trial scheduled to begin in early June. The CASA opposed staying the proceedings, reflecting her position that termination is in E.H.'s best interests. This court, however, granted the stay, recognizing that regardless of whether termination should ultimately be ordered, that decision cannot be made before this court has determined whether E.H. has been erroneously deprived of his right to appointed counsel.

In sum, because the trial court did not sufficiently account for the high risk that E.H. would be erroneously deprived of protected interests under the particular circumstances presented, I would reverse the ruling denying counsel.

## CONCLUSION

I agree that the joint motion to seal should be granted, but I would hold that E.H. is entitled to appointed counsel in accordance with even the minimum standards set by the federal due process clause. These holdings would be sufficient to resolve the pending issues presented, so I dissent only in part.

However, as my analysis shows, article I, section 3 of the Washington Constitution is more protective of a child's right to representation in dependency cases than the Fourteenth Amendment, and our current system of appointing counsel on a discretionary, case-by-case basis is failing to adequately protect the rights of children in dependency cases as a matter of Washington law.

Yu, J.

González, J.

*In the Matter of the Dependency of E.H. & S.K.-P.*

No. 94798-8
(consol. w/94970-1)

MADSEN, J. (concurring in dissent)—I agree with the lead opinion that the joint motion to seal should be granted. I write separately to agree with the dissent that E.H. is entitled to appointment of counsel under the standards set by the federal due process clause. I also agree with the dissent that this is sufficient to resolve the issues presented in this case. Accordingly, I concur in Part B of Justice Yu's dissent.

Madsen, J.